A03A1194. CARRIAGE HILLS ASSOCIATES, INC. et al.
v. MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA.
A03A1195. WALTON VENTURES, INC. et al. v. MUNICIPAL
ELECTRIC AUTHORITY OF GEORGIA.
(590 SE2d 156)

SMITH, Chief Judge.

Carriage Hills Associates, Inc. and Walton Ventures, Inc. appeal from the judgments on a jury verdict in these related cases arising from condemnation by the Municipal Electric Authority of Georgia (MEAG) of an easement across their property. Appellants, which are owned by the same individual and represented by the same counsel, tried the cases together and filed identical appellate briefs asserting the same four enumerations of error. Finding no error, we affirm.

1. Appellants first complain that the trial court erred in granting MEAG's motion in limine seeking to exclude expert testimony regarding potential commercial outparcels and apartment units that did not exist as of the date of taking.[1] In the same enumeration, appellants complain that the trial court erroneously instructed the jury with regard to this issue. But the trial court did not grant the motion in limine. After pretrial argument, the trial court stated, "I will have to allow it all. . . . I can't hold this evidence out." To the extent that appellants argue in their brief that the trial court excluded such evidence during the course of the trial, we note that the testimony of appellants' experts and their principal with respect to the potential value of development not yet in existence was admitted at trial over MEAG's repeated objections.

During the presentation of evidence, the trial court sustained MEAG's objection to the introduction on cross-examination of a plat showing an anchor building and outparcels, stating that it was doing so as part of the motion in limine. But the motion in limine sought to

---

[1] The original motion also sought to exclude any evidence of subjective fear of electric transmission lines, but that issue was not argued in the pretrial hearing and is not enumerated as error on appeal.

exclude expert testimony, not documentary evidence, and the trial court excluded the plat on the basis that it purported to show "that yes, that exists out there and that's being impacted by this easement" and thus was unduly prejudicial. This ruling was correct under our holding in *Dept. of Transp. v. Benton*, 214 Ga. App. 221, 222 (1) (447 SE2d 159) (1994):

> In all cases, the only question for decision is the value of property taken (or consequential damages) at the time of taking. The fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation; it must be shown that such use of the property is so reasonably probable as to have an effect on the present value of the land. *Even where a different use is shown to be reasonably probable, the jury cannot evaluate the property as though the new use were an accomplished fact*; the jury can consider the new use only to the extent that it affects the market value on the date of taking.

(Citations omitted; emphasis omitted and supplied.) Id. Moreover, the trial court's subsequent instruction to the jury correctly distinguished between potential development in the future and structures already existing on the property. As we observed in *Elliott v. Henry County Water &c. Auth.*, 238 Ga. App. 15, 17 (4) (517 SE2d 545) (1999), "[i]t is appropriate for a jury to be allowed to inquire into all legitimate purposes, capabilities and uses to which the property might be adapted, *provided that such use is reasonable and probable and not remote or speculative.*" (Citation and punctuation omitted.) See also *Ga. Transmission Corp. v. Barron*, 255 Ga. App. 645, 647 (566 SE2d 363) (2002).

Here, the trial court correctly instructed the jury,

> You should consider all legitimate purposes for which an undeveloped parcel can be used and not be restricted to its use at the time of the taking, but inquir[y] may be made as to all legitimate purposes for which the property could be appropriated. You should determine from the evidence what an undeveloped parcel's highest and best use is from all uses that are reasonably probable.

Appellants' contention that the trial court instructed the jury that it could only consider the value of the property as vacant land therefore is incorrect. This enumeration of error is without merit.

2. Appellants next allege that the trial court erred in making "a series of actions, statements and vituperative remarks against the

appellants" in the presence of the jury. But virtually all the statements complained of, particularly the remarks quoted by appellants as evidence of the trial court's alleged misconduct, were made not "in front of the jurors" as they allege, but after the jury was excused from the courtroom.

Moreover, while the discussion before the jury at times became somewhat heated, after the jury returned to the courtroom the trial court specifically stated, at appellants' request,

> Ladies and gentlemen of the jury, when you were sent out, you saw me act in what you might have perceived to be anger, and I am sure Mr. Hubert perceived it to be anger, about his questioning. That's a flaw in me. Mr. Hubert is a professional attorney and I hope I am a professional judge. . . . [Y]ou can't take what the judge does up here and say well, gosh, the judge was either for or against one of the sides. I am not. I don't care. I am totally neutral about this. My only concern up here is trying to get this trial going along in an efficient process. So I had to apologize to Mr. Hubert and I do apologize to Mr. Hubert for any anger that I might have expressed in my comments to him, because it was unprofessional on my part.

The trial court then asked the jury if anyone was unable to "put that aside and understand that these are equal, neutral parties and that this Court does not take a side on either side? Does everybody understand that? Does everybody believe that?" The jurors responded affirmatively. The trial court then asked appellants' counsel if he wished any further instructions, and counsel responded, "No, your Honor, and I do appreciate it." And during its charge at the close of the trial the court again instructed the jury, "I want to emphasize that anything the court did or said during the trial of this case was not intended to and did not intimate, hint or suggest to you which of the parties should prevail in this case." After the closing charge to the jury, appellants attempted to object to the earlier charge, but the trial court correctly noted that this noncontemporaneous objection came too late. See generally *Dover v. Master Lease Corp.*, 203 Ga. App. 526, 528 (6) (417 SE2d 368) (1992) (full concurrence in Division 6). Asked if he had any further objection, appellants' counsel responded, "Nothing, your Honor." Appellants' "acquiescence in this ruling deprives them of the right to complain of it on appeal. [Cit.]" *Browning v. Paccar, Inc.*, 214 Ga. App. 496, 499 (2) (a) (448 SE2d 260) (1994).

3. Appellants next complain of the trial court's instruction to the jury regarding the violation of the rule of sequestration. One of

appellants' witnesses violated the rule by conferring with two other witnesses regarding the method used to calculate the value of the subject property before and after the taking. See generally *Suggs v. State*, 272 Ga. 85, 87 (3) (526 SE2d 347) (2000) (police officer violated rule by discussing testimony with three witnesses outside the courtroom). During the charge conference, MEAG requested a charge regarding violation of the rule, and the trial court agreed to give it. The trial court instructed the jury that it was to determine whether the rule had been violated and that if it did so, it might consider the violation of the rule in assessing the credibility of the witnesses. We approved this method of dealing with a violation of the rule of sequestration in *Bean v. Landers*, 215 Ga. App. 366, 369 (3) (450 SE2d 699) (1994), and the trial court did not err in following that procedure. Contrary to appellants' contention, the trial court's earlier instruction to appellants' counsel not to leave the courtroom without permission had no bearing on the sequestration issue, which concerned not the lawyer's conduct but the witnesses' discussion of testimony outside the courtroom.

4. Finally, appellants complain that the trial court erred in denying their motion for mistrial made during the somewhat heated exchange discussed in Division 2. But appellants acquiesced and did not renew their motion for mistrial after the trial court gave the curative instruction requested by appellants. Appellants' contention is therefore without merit. *Dept. of Transp. v. Foster*, 262 Ga. App. 524, 527 (3) (586 SE2d 64) (2003).

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 4, 2003 —
RECONSIDERATION DENIED NOVEMBER 18, 2003 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert*, for appellants.

*Webb, Tanner & Powell, Robert J. Wilson*, for appellee.

