42632. DEPARTMENT OF TRANSPORTATION v. GUNNELS.

(340 SE2d 12)

PER CURIAM.

This case involves a partial taking through the exercise of eminent domain by the Department of Transportation, and centers upon the court's charge to the jury relative to damage. We granted certiorari upon the following inquiry: Whether the jury charge as to value of the portion taken results in double recovery or is otherwise error. *Dept. of Transp. v. Gunnels,* 175 Ga. App. 632 (334 SE2d 197) (1985).

The facts in the case are fairly simple. The Department by declaration took a strip of land from a parcel belonging to Gunnels, who appealed to a jury. The trial court charged the jury partially as follows: "[T]he measure of damages for the part of the lot actually taken by [DOT] is the difference between the market value of the whole lot just before the taking and the market value of the whole lot immediately after the taking. Now, that's the measure of damage for the part that was actually taken." Being dissatisfied with the verdict, the Department asserts that this charge erroneously allowed Gunnels, in a partial taking, to recover twice for the same thing — once as to the value of land actually taken, and secondly, as to consequential dam-

ages to the remainder. The Court of Appeals affirmed with two judges concurring specially, and one dissenting.

1. There is an inherent difficulty in the charge given by the trial court, which requires some address, notwithstanding that it appears to be based upon language appearing in *State Hwy. Bd. v. Bridges*, 60 Ga. App. 240, 241 (2) (3 SE2d 907) (1939). See our holding in *Elliott v. Fulton County*, 220 Ga. 377, 381 (139 SE2d 312) (1964), which seems to approve the rule in *Bridges*.

The problem is, obviously, in the use of the term "whole lot" to refer both to a parcel of property *undiminished* by a taking, and to the same parcel "immediately after the taking." Logically, there is no "whole lot" after the taking, but only a remnant or remainder of what, *before* the condemnation, was vested in the owner.

In his special concurring opinion (concurring, as he felt bound by other authorities), Judge Carley observed as follows: "The majority correctly notes that, in a partial taking condemnation proceeding, the first element of compensation is the market value of the property actually taken. To arrive at the amount of compensation for the part *actually taken*, the contested charge instructed the jury to determine the difference between the market value of the 'whole lot' immediately before and after the taking of a part thereof. If the market value of the 'whole lot immediately after the taking' is deemed to be the market value of the remainder immediately after the taking rather than the market value of the remainder as a part of the whole, it is clear that the amount arrived at by utilizing this method of calculation would result in a figure which already represents the diminution in the market value of *the remainder*. For example, there was testimony in the instant case that the value of appellee's entire parcel before the taking was $33,500 and that, after the taking, one-third of that value had been lost to appellee. Under the contested charge, the jury would have been authorized to find from this evidence that the market value of the strip of appellee's property *actually taken* was approximately $11,000 which is the difference between the market value of the 'whole lot' immediately before and after the taking. However, a significant portion of this $11,000 lost in value would represent the amount that appellee's *remainder* had been damaged as the result of the taking of the strip. It appears that employment of the term 'whole lot' in the contested charge, which purports to give the measure of damages for the portion actually taken and considered *as a part of the whole*, is in fact easily confused with a statement of the proper measure of consequential damages to that portion which remains. 'The proper measure of consequential damages to the remainder [property not taken] is the diminution, if any, in the market value of the remainder in its circumstances just prior to the time of the taking compared with its market value in its new circumstance just

after the time of the taking. . . .' *Justice v. Ga. Power Co.*, 164 Ga. App. 599, 601 (298 SE2d 579) (1982). Thus, since the jury in this partial taking case was given the instant charge and was also charged on consequential damages, there clearly was, as DOT asserts, the potential for a double recovery by the condemnee of consequential damages. The value of property is entirely different from the diminution in the value of property. The value of property is to be paid if it is *taken*. The diminution in value to property is to be paid if it is *damaged* as a result of the taking." 175 Ga. App. at 637-38.

2. In view of the logical impossibility of there being a "whole lot" both before and after the condemnation, we agree substantially with the views expressed by Judge Carley, and disapprove anything to the contrary found either in *State Hwy. Bd. v. Bridges*, supra, or *Elliott v. Fulton County*, supra.

3. Because the charge raises a substantial possibility that it might have been understood by the jury to authorize a double recovery, the case must be reversed, and a new trial held.

*Judgment reversed. All the Justices concur.*

WELTNER, Justice, concurring.

I concur in the opinion and in the judgment, and take this opportunity to present some additional considerations relative to the fixing of awards under our constitutional requirement.

1. Art. I, Sec. III, Par. I (a) of the Constitution of Georgia of 1983 provides: "Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation first being paid." In *Calhoun v. State Hwy. Dept.*, 223 Ga. 65 (153 SE2d 418) (1967), our court held: "It is beyond the power of the General Assembly to specify what evidence can or cannot be introduced to prove just and adequate compensation. If they have such power they could exclude all evidence and thus destroy the Constitution and private property also. . . . We therefore hold that for the reason that the 1966 Act is an attempt to invade the exclusive jurisdiction of the judicial department, it offends the constitutional separation of powers and is therefore void." 223 Ga. at 68, 69. (At issue in the *Calhoun* case was an Act of the General Assembly which, in essence, sought to evade the holding of this court in *Hard v. Housing Auth. of the City of Atlanta*, 219 Ga. 74 (132 SE2d 25) (1963).)

2. It is seen that "just and adequate compensation" is a matter whose interpretation rests with the judicial branch of government, and with it exclusively.

. In this connection, attention is invited to the provisions of OCGA §§ 22-2-63 and 22-2-109, which contemplate partial takings. The former of these sections provides (relative to consequential damages and

benefits in the assessor method of condemnation) as follows: "provided, further, that nothing in this Code section shall be so construed as to deprive the owner of the actual value of his property or interest so taken or used."

The latter, in the final sentence of sub-paragraph (c), provides: "Such consequential benefits, if any, may be offset against such consequential damages, if any; but in no event shall consequential benefits be offset against the value of the property or interest taken for such public improvement."

3. It cannot be denied, that just and adequate compensation must be just and adequate to the owner and to the condemning authority, as well. Justice is no more done in the case of *over*payment than in the case of *under*payment. As the final interpreters of our Constitution, we are called upon here to address the applicability of these code sections, to determine whether they be faithful applications of the constitutional mandate. *Calhoun*, supra.

Consider the following:

(a) A partial taking (hypothetically, of a narrow strip) might indeed render a remainder, still within the ownership of the condemnee, nearly worthless. Manifestly, "just and adequate compensation" cannot be restricted to the value of property actually taken, but concern must be given to the total situation. We will assume that the entire tract (the "whole lot") was worth prior to the condemnation a factor of 100. We will assume further that the portion taken, in and of itself and unrelated to the remainder, had a market value at a factor of 10. However, under our given factual situation, the value of the remainder is so diminished by virtue of the severance that its value is not a factor of 90 (100 minus 10), but 20.

It would be manifestly unjust for the condemning authority to damage the interest of the owner so as to reduce the value of that interest from 100 to 20, and to pay that owner only the value of the part taken — specifically, only a factor of 10. Having an interest worth 100 before, and only 20 afterward, the owner has been damaged in a factor of 80, which is the amount of just and adequate compensation which our Constitution would require be paid him.

It is this circumstance, I suggest, for which the code sections were drawn, and this evil which they were designed to prevent.

(b) There are other instances, however. One would be where severance from a tract (the severed portion being valued at a factor of 10) diminishes in no way the value of the remainder, which, if the whole tract be considered at a factor of 100 prior to condemnation, would be valued at 90 after condemnation. Just and adequate compensation *in this case* would be factually equivalent to the value of the property actually taken. The owner's interest before was worth 100, and now it is worth 90 — hence just and adequate compensation

would be a factor of 10, which is the difference in the two computations, before and after condemnation.

(c) The next case is one rarely reflected in our law books but, given the dynamics of burgeoning urban development, must become increasingly a matter of concern. That is where the taking for the purposes of public improvement results in the manifold enrichment of a property owner — far over and above any value of the partial taking severed from his remainder.

Using the same factor of 100 as the value of property prior to condemnation, assume in *this* instance, the taking is necessary for the installation of major public improvements (as example, a rapid transit station; or a highway interchange; or a major civic facility). The value of the property taken is 10, as in the other two cases. But the value of the remainder *after* the taking, and by virtue of the public use of the parcel taken (as well as other surrounding parcels) is exploded to a factor of 1000!

4. What is, in this last instance, just and adequate compensation? Before the taking, the owner's interest had a value of 100; after the taking, its value was 1000. It is quite true that we would never expect a property owner to compensate the public for enriching him. But is it logical that the public must pay him, *even more*, for making him wealthy?

Just and adequate compensation, then, in this third case is simply this: the difference between the value of the interest of the owner before the condemnation, and the value of the interest of the owner *after* the condemnation — *the same rule as in our two preceding hypotheses*.

If the value of the remainder subsequent to the condemnation exceeds the prior value of the whole tract, the owner's entitlement from the condemning authority would be limited to nominal damages.

5. It is seen that the same rule may be applied to each of these three cases. We do not need to trouble juries with discussions of the value of the property taken, or a weighing of "consequential benefits" and "consequential damages," or questions of "whole lots" and "severance" and other terms which serve to generate uncertainty.

Just and adequate compensation means that the owner must be made whole, to whatever extent *he* has been damaged by virtue of the taking. (In this discussion, we make a mistake to speak of "damage to property." Real property, itself, is not damaged; only the *value* of the owner's interest in real property is damaged.)

In each instance, the task of the trior of fact is the same: it must determine the value of the condemnee's interest before the taking; and it must determine the value of such interest, if any, as shall remain after the taking. If the value is less afterward than it was before, then that difference must be awarded to the condemnee as just and

adequate compensation. If value is the same or greater, then the condemnee's entitlement is but nominal damages.

6. "Just and adequate compensation" should be a two-way street. The public should not expect to finance its improvements by the expropriation of private property. Nor should any citizen expect to be *enriched* (as opposed to *compensated*) from the public treasury.

DECIDED MARCH 4, 1986.

*Michael J. Bowers, Attorney General, Jack L. Park, Jr., Special Assistant Attorney General*, for appellant.
*Harvey J. Kennedy, Jr.*, for appellee.