A03A1226. DEPARTMENT OF TRANSPORTATION v. MORRIS.
(588 SE2d 773)

ANDREWS, Presiding Judge.

The Georgia Department of Transportation (DOT) condemned a portion of a tract of land owned by Herman Morris for a road right-of-way pursuant to OCGA § 32-3-1 et seq., and a jury awarded Morris $32,000 as just and adequate compensation. The DOT appeals claiming the trial court erred by denying its motion for a directed verdict on the issue of consequential damages and gave erroneous instructions to the jury. For the following reasons, we find the trial court should have granted the DOT's motion and that the failure to do so resulted in a compensation award in excess of any amount supported by the evidence. Accordingly, we reverse.

1. The land at issue was a 2.5-acre tract owned by Morris which fronted on a highway. Morris's residence and other improvements were located on the property along with a brick fence around the

property located a short distance from the perimeter of the property. The fence ran parallel to the highway, then at a right angle away from the highway along the side of the property parallel to a road which bordered the property and intersected with the highway. To widen the highway, the DOT condemned a strip of Morris's land located between the fence and the highway. To provide an adequate line of sight for motorists at the new intersection of the widened highway and the road, the DOT also condemned a triangular area at the corner of Morris's property at the intersection and removed lengths of the brick fence in this area along the highway and the road.

Concluding that the highest and best use of the property was for residential purposes, the DOT's expert appraiser testified that the fair market value of the whole 2.5-acre property prior to the taking (the land, residence and other improvements) was $177,801; that the value of the property taken from the whole (the land and destroyed improvements thereon including the destroyed portion of the fence) was $3,561, and that therefore the fair market value of the remaining property prior to the taking was $174,240. According to the DOT's appraiser, the fair market value of the remaining property after the taking was constant at $174,240 so that there were no consequential damages to the remaining property as a result of the taking. It follows that the DOT's evidence showed that just and adequate compensation for the taking of the residential property was the $3,561 value of the land taken and the improvements located thereon.

Morris's expert appraiser gave alternative testimony based on the assumption that the highest and best use of the property was for residential purposes and based on the assumption that the highest and best use was for commercial purposes. On the assumption of residential use, the appraiser took into consideration the value of the residence and other improvements to determine the fair market value of the property. The appraiser testified that the fair market value of the whole 2.5-acre property prior to the taking (the land, residence and improvements) was $341,000. As to the value of the property taken by the DOT from the whole, the appraiser gave testimony only as to the value of the land apart from the improvements thereon. Although the appraiser testified that the value of the property taken from the whole (land only) was $3,361 (reducing the fair market value of the remaining property prior to the taking to $337,639), he did not give any testimony establishing the fair market value of the remaining property after the taking. Rather, the appraiser stated only that he found $31,000 in consequential damages based on evidence of damage to the fence caused by the taking.

This testimony was insufficient to establish that the taking of

part of the property caused consequential damages to the remainder. Consequential damages in a partial taking of property are shown by the difference between the fair market value of the remaining property prior to the taking and the fair market value of the remaining property after the taking. *Dept. of Transp. v. Gunnels*, 255 Ga. 495, 496-497 (340 SE2d 12) (1986). Evidence of damage to the fence as a result of the taking may be considered a factor in establishing the reduced fair market value of the remaining property after the taking, but it was not a substitute for evidence of property value and was insufficient to establish the amount of consequential damages. *Dept. of Transp. v. Adams*, 193 Ga. App. 866, 868 (389 SE2d 343) (1989). Accordingly, the only evidence provided by the appraiser sufficient for the jury to award compensation for the taking of residential property was the $3,361 value of the land taken.

Morris's appraiser also testified on the assumption that the highest and best use of the property was for commercial purposes, and that the improvements on the property (including the residence, fence and other improvements) had no value for the purpose of determining the fair market value of the property for commercial purposes. The appraiser found that the fair market value of the whole 2.5-acre property (land only) prior to the taking was $462,825; that the value of the property taken from the whole (land only) was $19,438, and that therefore the fair market value of the remaining property prior to the taking was $443,387. The appraiser concluded that, in addition to the $19,438 value of the land taken by the DOT, the fair market value of the remaining property after the taking was reduced to $412,387 by $31,000 in consequential damages to the remaining property caused by the taking. The appraiser found the $31,000 reduction in fair market value based on evidence produced by Morris that the taking required $31,662 to rebuild the brick fence on the property. Accordingly, Morris's appraiser testified that just and adequate compensation for the taking of commercial property was the value of the land taken ($19,438) plus the consequential damages to the remaining property ($31,000) for a total of $50,438.

Despite the expert testimony as to consequential damages, we agree with the DOT's contention that Morris failed to produce evidence sufficient to support the award of consequential damages, and that the trial court erred by not directing a verdict in its favor on the issue of consequential damages. As set forth above, Morris failed to produce any evidence sufficient to support the award of consequential damages to the remaining property assuming its highest and best use was for residential purposes. So the remaining issue is whether there was evidence of consequential damages to the remaining property assuming its highest and best use was for commercial purposes. The record shows that the opinion evidence as to consequential dam-

ages was based on evidence produced by Morris that, after the DOT took the strip of land between the fence and the highway, the fence was left too close to the highway for him to safely turn from the highway in his car and enter his residence through a gate in the fence. Morris also produced evidence that the value of the brick fence in relation to other architectural details of his residence was destroyed when the DOT took the triangular area at the corner of his property and removed portions of the fence which met at a right angle at the corner of his property. Morris produced evidence that to repair the damage to his residence the entire brick fence across the front of the property would have to be moved back a sufficient distance from the widened highway to allow him to safely enter through the gate and to restore the original appearance of the fence, including the right angle of the fence at the corner of the property. Evidence that the cost of doing so was $31,662 was the stated basis for the appraiser's opinion that the DOT taking caused $31,000 in consequential damages to the property based not on residential but commercial use. The appraiser found $31,000 in consequential damages based on the assumption of commercial use by testifying to a $31,000 difference between the fair market value of the remaining property prior to the taking ($443,387) and the fair market value of the remaining property after the taking ($412,387). But the appraiser also testified that in determining the fair market value of the property for commercial purposes he assigned no value to the residence, fence and other improvements. Since the fence played no part in the appraiser's calculation of the fair market value figures, then consequential damages (the difference between the figures) had nothing to do with the value of the fence. It follows that the expert appraiser's opinion that consequential damages flowed from a reduction in fair market value caused by the cost of rebuilding the fence was without foundation or probative value. *Merritt v. Dept. of Transp.*, 147 Ga. App. 316, 320 (248 SE2d 689) (1978), rev'd on other grounds, *Dept. of Transp. v. Merritt*, 243 Ga. 52 (252 SE2d 508) (1979).

There being no evidence sufficient for the jury to award consequential damages, the trial court erred by denying the DOT's motion for a directed verdict on those damages. *Bankers Health &c. Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 111 (150 SE2d 365) (1966); *Bradford v. City of Albany*, 242 Ga. App. 477, 478 (529 SE2d 906) (2000). In the absence of evidence of consequential damages, the maximum amount the jury was entitled to award as compensation under the evidence presented was the sum of $19,438 established as the value of the land taken for commercial purposes. Because the jury's award exceeded the maximum amount supported by the evidence, the judgment must be reversed.

2. Because the issues are likely to arise on retrial, we address the DOT's remaining claims that the trial court gave erroneous jury charges. Both parties agree, as do we, that there was no evidence to support the trial court's charge on peculiar or unique value of the property. *Dept. of Transp. v. Davison Investment Co.*, 267 Ga. 568, 569-570 (481 SE2d 522) (1997); *Taylor v. Jones County*, 205 Ga. App. 628, 630 (422 SE2d 890) (1992). We also agree that it was error for the trial court to charge that "costs of cure" was "one element of consequential damages" and if the jury found such costs "you may return a lump sum verdict rather than itemize separate amounts for such costs of cure as a form of consequential damages." Cost of cure is not a separate element or form of consequential damages, but is properly used as a factor to be considered in determining the amount of consequential damages. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 903 (517 SE2d 365) (1999); *Dept. of Transp. v. Adams*, 193 Ga. App. at 868. In view of the evidence in the case, the charge given by the trial court tended to mislead the jury into applying cost of cure as the measure of consequential damages. *Shugart v. Dept. of Transp.*, 184 Ga. App. 692, 693 (362 SE2d 474) (1987).

*Judgment reversed. Barnes and Adams, JJ., concur.*

DECIDED SEPTEMBER 26, 2003 —
RECONSIDERATION DENIED OCTOBER 14, 2003 — 

*Smith & Jenkins, Wilson R. Smith*, for appellant.
*Robert B. Smith*, for appellee.