A05A0567. DEPARTMENT OF TRANSPORTATION v. OGBURN HARDWARE & SUPPLY, INC. et al.
(614 SE2d 108)

BLACKBURN, Presiding Judge.

In this inverse condemnation case, the Department of Transportation appeals a judgment entered on a jury verdict in favor of Mr. Bonnie Ogburn and his company (Ogburn Hardware & Supply, Inc.), arguing that the court erred in denying a directed verdict and in admitting certain expert testimony. As some evidence supported the verdict, the trial court did not err in denying a directed verdict. Neither did it abuse its discretion in admitting the disputed testimony. Accordingly, we affirm.

Construed in favor of the verdict, the evidence shows that Ogburn owned certain land, which he leased to his company to operate a hardware store. In front of the hardware store was room for ten parking spaces. DOT decided to widen the road in front of the hardware store and to place a curb and gutter there. This reduced the number of parking spaces from ten to two, adversely impacting Ogburn's business. A second entrance was also impeded. DOT claimed that the widening took place within its currently existing right-of-way, whereas Ogburn contended that the widening encroached on his property.

Ogburn and his company sued DOT for inverse condemnation, seeking damages for encroachment and consequential damages. At trial, Ogburn called a surveyor, who over DOT's objection testified that based on his review of the relevant plats and deed boundary descriptions as well as permanent markers, the road widening encroached on 1,277 square feet of Ogburn's property. An expert appraiser testified that the value of the land taken was $2,916 and that the difference between the value of the remaining land before the taking and the value of the remaining land after the taking was $198,234. Ogburn testified to the loss of business caused by the taking. The court denied DOT's motion for directed verdict. The jury awarded Ogburn and his company $380,535 as follows: $2,900 for encroachment; $160,258 for consequential damages; $34,000 for loss of business; and attorney fees and expenses of $183,377. The court denied DOT's motions for new trial and for judgment notwithstanding the verdict. DOT appeals.

1. DOT first argues that the court erred in denying its motion for directed verdict. DOT claims that the testimony of Ogburn's expert appraiser regarding consequential damages was legally insufficient to establish the proper measure of damages. "In reviewing the denial of a motion for directed verdict, this Court must determine whether there is any evidence to support the jury's verdict." *Dept. of Transp. v. Edwards.*[1]

*Dept. of Transp. v. Gunnels*[2] sets forth the procedure to determine damages in an inverse condemnation action for a partial taking.

There are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken; and (2) the consequential damage, if any, to the remainder. In order to determine the total damages, a jury is required to follow a five-step procedure: (1) determine the fair market value of the entire tract of property before any part is taken; (2) the value of the partial portion taken considered as a part of the whole tract; (3) the value of the remaining tract but just before the taking; i.e., the value of the remainder as a part of the whole by subtracting the value of a part taken from the value of the entire property; (4) the market value of the remainder just after the taking, considering the negative impact of the separation of the part from the whole; and (5)

---

[1] *Dept. of Transp. v. Edwards*, 267 Ga. 733, 734-735 (1) (482 SE2d 260) (1997).
[2] *Dept. of Transp. v. Gunnels*, 175 Ga. App. 632 (334 SE2d 197) (1985), rev'd on other grounds, 255 Ga. 495 (340 SE2d 12) (1986).

the positive impact of the taking of the part upon the value of the remainder just after the taking.

Id. at 632 (1). "Consequential damages in a partial taking of property are shown by the difference between the fair market value of the remaining property prior to the taking and the fair market value of the remaining property after the taking." (Punctuation omitted.) *Dept. of Transp. v. Bacon Farms, L.P.*[3] See *Dept. of Transp. v. Gunnels*[4] ("[t]he proper measure of consequential damages to the remainder property not taken is the diminution, if any, in the market value of the remainder in its circumstances just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking") (punctuation omitted).

Here, Ogburn's expert appraiser testified that based on a market analysis and comparable sales, the value of the entire tract of land prior to the taking was $365,000. The portion of the land taken was worth $2,916, leaving the remaining land not taken as worth $362,084 just prior to the time of taking. The appraiser then considered the cost to cure the lack of parking spaces and access caused by the taking, a more recent comparable sale, and "the loss of parking, access, ingress, all of that he had before that he doesn't have in the after." No positive impact was shown. Based on these considerations, the appraiser valued the remainder after the taking at $163,850. The difference between the value of the remainder prior to the taking ($362,084) and the value after the taking ($163,850) was $198,234, which constituted the consequential damages.

DOT claims this testimony is faulty in that the consequential damages of $198,234 were the same as the cost to cure estimate of $198,234. DOT claims that the appraiser therefore simply substituted the cost to cure for the consequential damages, which DOT argues was improper under *Dept. of Transp. v. Morris.*[5] DOT misinterprets *Morris*, however, which specifically held that evidence of damage to the property as a result of the taking (represented by a cost to cure) "may be considered a factor in establishing the reduced fair market value of the remaining property after the taking." Id. at 608 (1). The problem in *Morris*, which is not present in the case at bar, is that the appraiser "did not give any testimony establishing the fair market value of the remaining property after the taking [but] stated only that he found $31,000 in consequential damages based on evidence of damage to the fence caused by the taking." Id. at 607 (1).

---

[3] *Dept. of Transp. v. Bacon Farms, L.P.*, 270 Ga. App. 862, 866 (2) (608 SE2d 305) (2004).

[4] *Dept. of Transp. v. Gunnels*, supra, 255 Ga. at 496-497 (1).

[5] *Dept. of Transp. v. Morris*, 263 Ga. App. 606 (588 SE2d 773) (2003).

Moreover, the appraiser in *Morris* insisted on valuing the residential property at issue as if it were commercial property and refused, in calculating fair market value figures, to assign any value to the improvements on the remaining property (such as the fence); "[i]t follows that the expert appraiser's opinion that consequential damages flowed from a reduction in fair market value caused by the cost of rebuilding the fence was without foundation or probative value." Id. at 609 (1).

In the present case, the appraiser used the cost to cure as an important factor in reaching his conclusion as to the value of the remainder after the taking and thus in determining the consequential damages. See *Dept. of Transp. v. 2.953 Acres of Land*[6] ("[i]n a partial taking case, evidence as to the cost to cure may be admissible as a factor to be considered in determining the amount of recoverable consequential damages to the remainder") (punctuation omitted). No Georgia jurisprudence holds that the fact that the consequential damages end up being equal to the cost to cure is fatally defective to an appraiser's testimony; indeed, because the cost to cure is an important, allowable factor in determining the value of the remainder, such a result is hardly surprising. See *Benton v. Chatham County*[7] ("[n]othing in either of the *Gunnels* decisions . . . mandates that an expert arrive at his property appraisal only by means of one inflexible procedural process"). Cf. *Dept. of Transp. v. Mendel*[8] ("[t]he expert was not required to make an adjustment for comparables in the 'after' portion of his analysis. 'Testimony of an expert can be considered even though he did not base his opinion entirely on comparable transactions.' ").

Accordingly, the appraiser's testimony here was legally sufficient to show the consequential damages. The trial court did not err in denying DOT's motion for directed verdict.

2. In its second enumeration, DOT contends that the trial court erred in admitting the testimony of a surveyor who reviewed the relevant plats, deed boundary descriptions, and permanent makers in concluding that DOT's widening of the road encroached on Ogburn's land. DOT claims that this testimony was speculative guesswork. "In reviewing this enumeration of error, we note at the outset that admissibility of evidence is a matter which rests largely within the sound discretion of the trial court." (Punctuation omitted.) *2.953 Acres of Land*, supra at 47 (1).

---

[6] *Dept. of Transp. v. 2.953 Acres of Land*, 219 Ga. App. 45, 47 (1) (463 SE2d 912) (1995).

[7] *Benton v. Chatham County*, 206 Ga. App. 285, 289 (4) (b) (425 SE2d 317) (1992) (physical precedent only).

[8] *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 903 (3) (a) (517 SE2d 365) (1999).

Ogburn's surveyor, who for many years has served as a surveyor for numerous counties (including the county in which Ogburn's property is located), testified that he reviewed the following in reaching his opinion about the encroachment. He studied 65 old and current plats, plans, and deeds; he conducted extensive field work, reviewing the markers found in the interior of the property at issue and the placement of the DOT right-of-way markers; he surveyed the property using various accepted measurements and standardized procedures; he calculated and reconciled angles, determining that the DOT's own description of its right-of-way would result in the right-of-way being in the middle of currently existing buildings, including the courthouse; he considered various other inconsistencies in the DOT's description of its right-of-way; and he used a nationally recognized and oft-utilized computer software program to analyze and reconcile deed boundaries. Based on a careful review of these factors, he used his experience as a surveyor and followed well-recognized techniques in the field (and in this particular county) to determine the actual boundary lines of Ogburn's property and of the DOT's right-of-way, which determination showed a right-of-way that did not impinge on any currently existing buildings and also showed that DOT had taken 1,277 square feet of Ogburn's property when DOT widened the road.

Both pretrial and at trial, DOT sought to exclude this surveyor's testimony, arguing it was speculative since it did not consider as its primary determinative factor the actual placement of the road at issue. The court conducted an extensive pretrial hearing and determined the testimony was admissible. The court reiterated its decision during and after the surveyor's testimony at trial. In light of the extensive basis for the surveyor's testimony, his careful and detailed work, his explanation of discrepancies, and his description of his methodology and its acceptance in his field, we can discern no abuse of discretion in the trial court's decision to admit the testimony. This enumeration fails.

*Judgment affirmed. Miller and Adams, JJ., concur. Bernes, J., disqualified.*

DECIDED APRIL 11, 2005 —
RECONSIDERATION DENIED APRIL 29, 2005 — ▮

*Thurbert E. Baker, Attorney General, Smith & Jenkins, Wilson R. Smith, Anne W. Sapp*, for appellant.

*Gambrell & Stolz, Charles L. Ruffin, Carl R. Varnedoe*, for appellees.