A08A1195. STEELE et al. v. DEPARTMENT OF TRANSPORTATION.
(671 SE2d 275)

PHIPPS, Judge.

The Georgia Department of Transportation (DOT) filed a condemnation petition to acquire fee simple title to 0.653 acres of land and a construction-and-maintenance easement in 0.028 acres of land within a 2.365-acre tract owned by Thomas Jerry Steele and others (condemnees). Dissatisfied with $154,050 the DOT paid into court as its estimate of the total compensation due the condemnees, they appealed to superior court. At trial, the jury returned a verdict in favor of the condemnees finding just and adequate compensation in the total amount of $308,000.

The condemnees now appeal judgment entered on the verdict. They claim that they should have been permitted to impeach the DOT appraiser's trial testimony with his pretrial estimate of just and adequate compensation. They charge the trial court with error in limiting their proof of consequential damages by refusing to allow them to show how much it had cost them to cure the DOT's property damage and how the DOT's taking of part of the property had reduced their allowable building space in the remainder. Because the trial court committed prejudicial error in refusing to allow the condemnees to impeach the DOT's appraiser, we reverse.

The condemnees own a strip shopping center located at the intersection of Jonesboro and Oak Grove Roads in Henry County. The shopping center primarily consists of a building that is about 15,000 square feet and a parking lot containing 73 spaces.

In October 2004, the DOT instituted this proceeding pursuant to OCGA § 32-3-4 to acquire property rights necessary for construction of a state aid road. As required, the DOT filed a declaration of taking that incorporated a sworn affidavit of an appraiser stating "the sum of money estimated by the condemning authority to be just compensation for the land taken, including consequential damages to land not taken."[1] In this affidavit, the appraiser, Kenneth Cantrell, testified that he had estimated that the just and adequate compensation for the parcel, and any consequential damages or benefits considered, was $154,050. Pursuant to OCGA § 32-3-7, that amount was therefore deposited into the court and the land was condemned. The condemnees then filed a notice of appeal as authorized by OCGA § 32-3-14.

Before the case came on for trial before a jury in April 2007, the DOT filed a motion in limine to exclude any testimony or evidence concerning the estimate of just compensation for the condemned property in the affidavit filed by Cantrell with the declaration of taking. At the beginning of the trial, the court granted the DOT's motion.

At trial, the condemnees presented a witness, H. M. Bradford, to testify concerning compensation for the land taken and consequential damages to the remainder. After Bradford testified that he had valued the condemnees' remaining property after the taking at $1,880,154.50, he was asked what types of consequential damage he had found. He responded that he had found consequential damages consisting of a change in the elevation of the property, a reduction in the amount of available building space, and cost to cure damage to the property done by the DOT during construction. After the DOT objected to that testimony, the court heard extensive argument of counsel outside the presence of the jury. The trial court ruled: (1) that Bradford could not present evidence of cost to cure damages without giving an opinion as to how the value of the condemnees' remaining property was thereby diminished, and (2) that the fact that the condemnation of part of the condemnees' property may have precluded the condemnees from expanding the existing building was irrelevant, because the condemnees had never sought to expand the building. Bradford later retook the stand and testified, without objection, as to how the cost to cure damages, including the change

---

[1] OCGA § 32-3-6 (b) (5).

in the elevation of the condemnees' remaining property, had adversely affected the property's value.

1. The condemnees charge the trial court with error in refusing to allow them to use the inconsistency between the DOT appraiser's pretrial affidavit and his trial testimony for impeachment purposes.

"[I]t being well settled that the return of an appraiser in a condemnation case which is contradictory of his testimony on the trial may be introduced for the purpose of impeaching him though it is generally inadmissible[,]"[2] we agree that the trial court erred in this regard.

Here, the DOT's appraiser's estimate of just and adequate compensation in the affidavit accompanying the declaration of taking was $154,050, his estimate of just and adequate compensation at trial was $288,600, and the jury awarded the condemnees $308,000 as just and adequate compensation. Under these circumstances, it could be argued that the condemnees did not suffer any legal prejudice at the trial of the case as a result of the court's ruling.[3] And indeed *Smaha v. State Hwy. Dept.*[4] constitutes authority in support of such an argument.

But *Dept. of Transp. v. Adams*[5] overruled *Smaha*. In *Adams*, the condemnees' expert testified that in arriving at his opinion as to value, he had used a sale occurring over one year after the condemnation as a comparable sale. The condemnor sought to impeach the expert by showing that the same property had been sold only a few months after the condemnation. The condemnees argued that any error in the trial court's refusal to allow the impeachment was harmless because the jury had returned a verdict in an amount less than the opinion given by the expert at trial. *Adams* rejected the condemnees' "harmless error" argument, recognizing that if the expert had been impeached, the jury would have been authorized to discount the entirety of his testimony. Therefore, even though the verdict may have been lower than the expert's opinion as to value, it could not be said with any certainty that the verdict would not have been even lower had he been impeached.

---

[2] *Dept. of Transp. v. George*, 202 Ga. App. 270-271 (1) (414 SE2d 307) (1991) (citations and punctuation omitted); compare *Aiken v. Dept. of Transp.*, 171 Ga. App. 154, 155 (2) (319 SE2d 58) (1984) (no error in refusing to admit appraiser's affidavit, where appraiser did not testify and was thus not subject to impeachment).

[3] Logically, however, the fact that the DOT appraiser's initial estimate of just and adequate compensation was substantially lower than the value he placed on the condemned property at trial would be relevant to a claim by the condemnees for attorney fees in being required to litigate the matter. See *Dept. of Transp. v. Woods*, 269 Ga. 53 (494 SE2d 507) (1998).

[4] 114 Ga. App. 60, 61-63 (2) (150 SE2d 327) (1966).

[5] 193 Ga. App. 866-867 (1) (389 SE2d 343) (1989).

The situation in this case is analogous to the one in *Adams*. Here, the condemnees' expert's estimate of just and adequate compensation was $584,135. As argued by the condemnees, if they had been allowed to impeach the condemnor's expert by showing the wide disparity in his $154,050 and $288,600 compensation estimates before and at trial, the jury might have been persuaded to render a verdict closer to the condemnees' expert's $584,135 estimate rather than the $308,000 verdict that was much more closely aligned with the estimate provided by the condemnor's expert at trial. We thus find that the court's refusal to allow impeachment of the condemnor's expert constituted harmful error requiring a new trial. The condemnees' remaining claims of error will be reviewed because of the possibility that the issues raised can recur on retrial.

2. The condemnees next contend that the trial court erred in placing limitations on their ability to prove cost to cure damages.

"There are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken, and (2) the consequential damage, if any, to the remainder."[6] "Consequential damages in a partial taking of property are shown by the difference between the fair market value of the remaining property prior to the taking and the fair market value of the remaining property after the taking."[7] "[E]vidence of damage to the property as a result of the taking (represented by a cost to cure) may be considered a factor in establishing the reduced fair market value of the remaining property after the taking."[8] But even though this may be an important factor used by an appraiser in determining the value of the remainder, it is not recoverable as a separate element of damage.[9]

Consequently, in *Dept. of Transp. v. Ogburn Hardware & Supply*,[10] the appraiser's testimony was found legally sufficient to show consequential damages where he found that the value of the condemnee's remaining property had been reduced by the amount of the cost to cure. In *Dept. of Transp. v. Morris*,[11] however, the appraiser's testimony was found insufficient to establish consequential damages, where he stated only that he had found a certain dollar amount of damages to an improvement to the condemnee's remaining

---

[6] *Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (1) (366 SE2d 160) (1988) (citation omitted).

[7] *Dept. of Transp. v. Ogburn Hardware & Supply*, 273 Ga. App. 124, 126 (1) (614 SE2d 108) (2005) (citation and punctuation omitted).

[8] Id. (citation and punctuation omitted).

[9] *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 903 (3) (b) (517 SE2d 365) (1999); see *Dept. of Transp. v. Adams*, 193 Ga. App. 866, 867-868 (2) (389 SE2d 343) (1989).

[10] Supra.

[11] 263 Ga. App. 606, 607-608 (1) (588 SE2d 773) (2003).

property caused by the taking but did not give any testimony establishing the fair market value of the remainder. Thus, as held in *Dept. of Transp. v. Mendel*,[12]

> the issue is not whether a specific monetary [value] is assigned as the cost to cure but whether that evidence is improperly used to claim cost to cure as a separate element of damage, rather than to properly explain how cost to cure was used as a permissible factor in determining consequential damages.[13]

Here, the trial court refused to allow the condemnees to claim cost to cure as a separate element of damages, but then allowed them to show how the cost to cure adversely affected the value of their remaining property. We find no error.

3. The condemnees also complain that the trial court erred in refusing to allow them to prove consequential damages by showing that the taking of the condemned property had reduced the allowable building space on the property not condemned.

When the condemnees attempted to show the reduction in allowable building space as a distinct element of damages, the court ruled that such damages were speculative because the condemnees had never sought to enlarge their building.[14] The court also recognized that to recover consequential damages, the condemnees were generally required to show how the value of their remaining property was thereby reduced. Here, the condemnees made no proffer of any testimony showing how the reduction in allowable building space for the property not condemned affected its value.[15] "[I]t is a well settled rule that in order to preserve a ground of objection relating to the exclusion of oral testimony it is necessary for the complaining party to show what he expects to prove and that the evidence is material, relevant and beneficial."[16] Because no offer of proof was made, no reversible error has been shown.[17]

---

[12] Supra.

[13] 237 Ga. App. at 903 (3) (b).

[14] Compare *Lee v. Dept. of Transp.*, 191 Ga. App. 1 (380 SE2d 726) (1989) (condemnee applied for a building permit for a 14,000 square foot shopping center as permitted by city building regulations before a part of his property was condemned, but due to loss of parking spaces as a result of condemnation only a 10,400 square foot shopping center could be built).

[15] Compare *Moss v. Hall County Bd. of Commrs.*, 197 Ga. App. 76 (397 SE2d 493) (1990) (evidence presented showing that tract remaining in ownership of condemnee after condemnation suffered a reduction of permissible building area that adversely affected its value).

[16] *Jones v. Livingston*, 203 Ga. App. 99, 103 (4) (416 SE2d 142) (1992) (citation and punctuation omitted).

[17] *Clayton County Water Auth. v. Harbin*, 192 Ga. App. 257, 258 (2) (384 SE2d 453) (1989).

*Judgment reversed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 25, 2008 —
RECONSIDERATION DENIED DECEMBER 15, 2008 — 

*Fincher, Denmark & Williams, Steven M. Fincher, Winston A. Denmark, Emilia C. Walker,* for appellants.

*Thurbert E. Baker, Attorney General, Power & Cooper, Warren R. Power,* for appellee.