A11A2112. GWINNETT COUNTY v. ASCOT INVESTMENT COMPANY et al.
(726 SE2d 130)

BLACKWELL, Judge.

Gwinnett County brought an action to condemn certain property, in which Ascot Investment Company and Peoples Bank & Trust had an interest, for a public roadway project designed to improve the area around Georgia Gwinnett College.[1] A jury awarded more than $3 million to Ascot and the Bank for the taking of the property, and the court below entered a final judgment upon the verdict of the jury. The County appeals, claiming that the trial court erred by admitting evidence of pre-taking damages, failing to give a requested charge that pre-taking damages are not recoverable, admitting evidence about the proposed future development of the property that is hypothetical and speculative, and refusing to strike a juror based upon his difficulty understanding English. We find no error and affirm.

1. We first address the claims that the trial court erred when it admitted evidence of, the County says, pre-taking damages and when

---

[1] Pursuant to the taking, the County acquired fee simple title to 2.38 acres as a "required right of way" and a permanent easement over an additional 0.976 acres for drainage and the construction and maintenance of slopes. The taken property divided an approximately 11-acre tract of land owned by Ascot and in which the Bank possessed a security interest.

it failed to give a jury charge that the County requested about such damages. The Georgia Constitution provides that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. III, Par. I (a). And where, as here, there is a partial taking of property by condemnation, just and adequate compensation is the sum of the market value of the property that is taken and the consequential damage, if any, to the property that remains, both measured as of the time of the taking. *Dept. of Transp. v. Ogburn Hardware & Supply*, 273 Ga. App. 124, 125 (1) (614 SE2d 108) (2005). The consequential damage to the property that remains is the difference between its fair market value before the taking and its fair market value after the taking. Id. at 126 (1). Just and adequate compensation does not include damage to the value of the property before the date of taking as a result of mere anticipation that the property later will be taken. *Five Forks v. Dept. of Transp.*, 250 Ga. App. 157, 159-160 (550 SE2d 715) (2001).

Here, the evidence shows that Ascot purchased a 28.606-acre tract of land adjacent to Georgia Gwinnett College in 2006. Shortly thereafter, Ascot entered into negotiations with a third-party developer of student housing, which was interested in buying a portion of the property for the construction of a student housing development. Ascot and the developer signed an agreement in March 2007, in which the developer agreed to buy 19.03 acres of the property for $8 million, or approximately $420,000 per acre. Before the agreement closed, however, Ascot became aware of the County's intention to condemn a portion of the property that it had agreed to sell to the developer. Consequently, in February 2008, Ascot and the developer entered into an amended purchase agreement, which reduced the acreage being sold to approximately 17.6 acres and decreased the purchase price to approximately $7.4 million, still about $420,000 per acre. In March 2009, the County filed its declaration of taking, which did not pertain to any of the acreage identified for sale in the amended purchase agreement.

At trial, the County did not object to the introduction of the two purchase agreements between Ascot and the student housing developer[2] or to testimony about why the original purchase agreement was amended. But the County unsuccessfully sought to prevent Ascot and the Bank from introducing testimony about exactly which acreage was included in the original purchase agreement but omitted

---

[2] We note that this court has previously held that an executed contract of sale, even if the sale never is closed, is admissible for the purpose of showing comparative valuation by an expert witness. *Jordan v. Dept. of Transp.*, 178 Ga. App. 133, 134 (2) (342 SE2d 482) (1986).

from the amended purchase agreement. The County now claims on appeal that testimony about Ascot's original agreement to sell 19.03 acres to the developer was irrelevant evidence of pre-taking damages. Assuming that the objections at trial were sufficient to preserve this claim, we conclude that it has no merit.

The testimony about which the County complains tends to show that the developer was willing to pay approximately the same price per acre — about $420,000 — when the property to be sold included land that was later the subject of the taking *and* when the property excluded that land. This served to discredit the testimony of the County's expert witnesses, who testified that the topography of the land that was ultimately taken by the County made it less desirable than the land sold by Ascot to the developer.[3] The County has not pointed to any portion of the record, nor could we find any, in which Ascot or the Bank argued or even implied that they were entitled to pre-taking damages as a result of having to renegotiate the purchase agreement with the developer. Instead, they consistently and properly maintained that the jury should award them an amount equal to the value of the taken property, plus the consequential damages to the remainder.[4]

We also disagree with the County's assertion that the trial court erred when it refused to give a jury charge that would have instructed the jury that Ascot and the Bank were not entitled to recover any losses resulting from the mere anticipation that a taking would occur. As previously noted, there was no evidence presented of pre-taking damages in anticipation of the taking. And the trial court properly instructed the jury that "the only question" it must answer was "[w]hat constitutes just and adequate compensation for the property taken" and that the determination of the value of the property is to be made as of the date of the taking.[5] The trial court also informed the jury of the two types of damages that could be awarded, direct and consequential, and the court defined direct damages as the value of the property actually taken and consequential damages as "pertain[ing] to the property the owner has left after the part the condemnor takes or uses is subtracted."[6] Viewing the charges as a whole, as we must, we find that they properly explained

---

[3] For example, one of the experts described the land sold by Ascot to the developer as the "tenderloin" and the land that was taken by the County as "second tier."

[4] In any event, it is difficult to see how the original purchase agreement could serve as evidence of pre-taking damages resulting from an anticipation that a taking would occur, given that the evidence indicates that the parties did *not* anticipate then that the agreement would be affected by any condemnation.

[5] See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (4th ed.), § 14.020.

[6] See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (4th ed.), §§ 14.100 and 14.120.

how the jury was to calculate damages, and the trial court did not err when it refused to provide an additional charge in the exact language requested by the County. See *Norton v. Holcomb*, 299 Ga. App. 207, 213 (5) (682 SE2d 336) (2009).

2. We next address the claim that the trial court erred when it admitted evidence of the proposed future development of Ascot's property, which was hypothetical and speculative, the County contends. Specifically, the County argues that the trial court should have excluded the testimony of an expert witness, as well as "financial feasibility studies" prepared by that witness, about the practicality of developing student housing on the property. The expert was the director of development for the student housing developer that purchased a portion of Ascot's property in February 2008, as described in Division 1. In short, the expert concluded that, before the taking by the County, Ascot's property was well-suited to develop into lucrative student housing for Georgia Gwinnett College, but the property no longer was suited for such a purpose after it was divided by the taking.

"It has long been the policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective minds in determining the just and adequate compensation to be paid the condemnee." *Dept. of Transp. v. Southeast Timberlands*, 263 Ga. App. 805, 808 (2) (a) (589 SE2d 575) (2003) (citation and punctuation omitted). And it is well established that a jury in a condemnation action may consider "all legitimate purposes, capabilities and uses" to which the property might be adapted, "provided that such use is reasonable and probable and not remote or speculative." Id. (citation and punctuation omitted); see also *Carriage Hills Assoc. v. Municipal Elec. Auth. of Ga.*, 264 Ga. App. 192, 193 (1) (590 SE2d 156) (2003). Here, evidence was presented that, when Ascot purchased the property in 2006, it was zoned for townhomes, but in August 2006, Ascot procured a rezoning of the property to allow student dormitories to be developed on the entire 28.631-acre tract. According to an expert witness who appraised the property, such a rezoning is unusual, and land zoned for student housing was described as "a diamond in the rough." The zoning for student housing was possible in this case, according to Ascot's expert witnesses, because Ascot's property was adjacent to Georgia Gwinnett College. Ascot sold 17.6 acres of its property in February 2008 to a developer of student housing properties, but Ascot retained approximately 11 acres that it planned to use for a second student housing development. That same month, Ascot and the student housing developer entered into an agreement for the construction of a retention pond to collect storm water runoff from the future development of both of the properties. Evidence also was

presented that Ascot discussed its plans with the College, and the College assured Ascot that the College would continue to grow and that there would be a need for additional student housing. And while the County made much of the fact that Ascot had only preliminary site plans, and no architectural plans, for the development of student housing on the property, the director of development for the student housing company testified that the lack of architectural plans was not unusual and that his company purchased the 17.6 acres from Ascot in 2008 to develop student housing without first spending the funds to prepare architectural plans.

While the County claims that Ascot and the Bank improperly valued the property as though a development of student housing was an accomplished fact, see, e.g., *Dept. of Transp. v. Benton*, 214 Ga. App. 221, 222 (1) (447 SE2d 159) (1994), their appraiser explicitly testified that he valued the property as a vacant tract of land and not as if the development was an accomplished fact. And evidence of the value of property is not limited to the use of the property at the time of the condemnation, as long as another use is so reasonably probable as to have an effect on the present value of the land. *Shepherd Interiors v. City of Atlanta*, 263 Ga. App. 869, 871-872 (2) (589 SE2d 640) (2003). Here, Ascot and the Bank presented expert testimony that the property's value at the time of the taking was affected by its probable future use for student housing. As a result, the trial court did not commit a manifest abuse of discretion when it allowed evidence that, as a result of the taking of the property, it was no longer feasible to construct student housing on the remainder. See *Flint v. Dept. of Transp.*, 223 Ga. App. 815, 817 (1) (479 SE2d 160) (1996).

3. Finally, we address the claim that the trial court erred when it refused to strike a juror who, according to the County, was not sufficiently able to understand English. Although OCGA § 15-12-163 (b) (6) provides that a juror in a felony case may be excused for cause if he "is unable to communicate in the English language[,]" the decision to strike a juror for cause in both civil and criminal cases lies within the sound discretion of the trial court, and its ruling on a juror's suitability "may only be reversed upon a finding of 'manifest abuse' of that discretion." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). Here, during voir dire, the County's lawyer asked the juror at issue if he spoke English fluently. The juror responded that it "depends [on] what kind of matter we're talking about. I'm not flexible with technical language, but [if] you repeat and speak slowly to me, I can respond much better." When asked if he could keep up with expert testimony about appraisals and engineering, the juror acknowledged that, "[c]learly, I can experience some difficulty understanding because I'm not familiar [with that] type of language."

But the juror also said that he had lived in the United States since 1988, that he works as a consultant and instructor developing training seminars in English and Spanish, and that in his "everyday sort of life," he uses a combination of English and Spanish. The juror answered all of the lawyers' questions during voir dire, and although his answers were not grammatically perfect, they suggest that he understood the questions asked of him. And while the juror acknowledged that he might have difficulty understanding some technical language used by expert witnesses, many native English speakers might have the same difficulties if unfamiliar with the worlds of appraisals and engineering. The trial judge was in the best position to assess whether this juror could understand English well enough, and based on our review of the record, we are unable to find that the trial court manifestly abused its discretion when it refused to remove the juror.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED MARCH 16, 2012.

*Carothers & Mitchell, Richard A. Carothers, Amy B. Cowan, Michael E. Hobbs*, for appellant.

*Mahaffey, Pickens & Tucker, Steven A. Pickens, Richard L. Tucker, Jr.*, for appellees.