A99A0436. DEPARTMENT OF TRANSPORTATION v. MENDEL.
(517 SE2d 365)

JOHNSON, Chief Judge.

This suit arises from a condemnation action in which the Department of Transportation took square footage from and acquired a permanent slope easement on commercial property in order to widen and raise the elevation of State Road 120. After the road project was completed, the property was left approximately eight to ten feet lower from road grade than it was before the taking. In some locations, the property was left 16 feet below road grade.

In 1994, the DOT filed an action in rem to acquire fee simple title to a portion of the subject property for the right-of-way and to acquire a permanent slope easement for maintenance of the right-of-way.[1] The Russell Corporation, the original condemnee, owned the property at the time the action was filed. On the date of the taking, the Russell Corporation had filed for bankruptcy, and a bankruptcy trustee had been appointed. After the taking, the trustee filed an appeal. More than a year after the taking, Herbert A. Mendel offered to purchase the remainder of the property for $187,500. He subsequently raised his offer and purchased the remainder for $220,000. In addition to the remainder, Mendel received an assignment of the trustee's pending claim in this case. The purchase was approved by the bankruptcy court, and Mendel was substituted as the sole condemnee.

The case proceeded to trial, with the parties contesting the value of the property on the date of taking. The jury returned a verdict for $165,000 in favor of Mendel, and judgment was entered on the verdict. The DOT filed a motion for new trial. The trial court denied the motion, and the DOT appeals. For the following reasons, we affirm.

1. Before trial, the DOT filed a motion to limit Mendel's testimony regarding value to that amount which Mendel allegedly lost;

---

[1] As a result of this action, the DOT acquired a permanent slope easement of 5,405.7 square feet and took approximately 32.5 square feet of the subject property.

that is, to the amount he paid for the assignment of rights from the trustee. The DOT contended the amount paid for the assignment was $32,500, that being the difference between the final purchase price of $220,000, which allegedly included the assignment, and Mendel's original purchase offer of $187,500. On appeal the DOT asserts that the trial court erred by denying its motion in limine. We disagree.

Rights of action are assignable in condemnation cases. See OCGA § 44-12-24; *Henson v. Dept. of Transp.*, 160 Ga. App. 521, 522 (1) (287 SE2d 299) (1981). The assignment was valid, and Mendel stands in the shoes of the original condemnee, the Russell Corporation.

The DOT argues, inter alia, that unless Mendel is limited in his recovery to the amount he paid for the assignment, he will receive an unauthorized windfall. We find that Mendel did not obtain a windfall. Unlike the situation in *Durden v. Reynolds*, 264 Ga. 34 (440 SE2d 170) (1994), which did not involve the assignment of a condemnation claim, Mendel was not asserting his own independent cause of action, but litigating the cause of action arising from the taking of property from the original condemnee. The case of *Merritt v. Dept. of Transp.*, 147 Ga. App. 316, 320 (4) (248 SE2d 689) (1978), rev'd on other grounds, 243 Ga. 52 (252 SE2d 508) (1979), is also distinguishable. In *Merritt*, there was an approved guardian sale of the property just three months prior to the taking, and this sale was found to be relevant to a determination of the property's value at the time of the taking.

In this case, the DOT is attempting to limit Mendel's recovery to the amount which he allegedly paid for his assignment without regard to the fair market value of the property. The only relevant inquiry is the fair market value of the property at the time of the taking. *Dept. of Transp. v. Petkas*, 189 Ga. App. 633, 638 (5) (377 SE2d 166) (1988). The amount of money which Mendel may have paid for the assignment is not relevant to this determination. The real issue is what is just and fair compensation for the taking. Just compensation must be based on the value of the rights taken, without regard to the owner's personal relationship to the property taken. *Dept. of Transp. v. Metts*, 208 Ga. App. 401, 402 (2) (430 SE2d 622) (1993). The trial court did not abuse its discretion in denying the DOT's motion in limine. See *Dept. of Transp. v. Petkas*, supra; see also *Dept. of Transp. v. Wright*, 169 Ga. App. 332, 335 (1) (312 SE2d 824) (1983).

2. During trial the DOT attempted to introduce evidence of the subsequent sale of the remainder to Mendel. The DOT argued that although its expert had formed an opinion as to fair market value before the sale of the remainder and had not since changed his opinion, the sale was admissible as an "additional comparable" and relevant to bolster the expert's opinion. The trial court ruled that the evidence was inadmissible because the price paid by Mendel was for

both the remainder and the assignment, and there was no way to ascertain the exact amount paid for the remainder. The trial court noted that the DOT's analysis placed no value on the assignment and the assignment was, in fact, valuable.

Where the value of property is in dispute, evidence of sales of comparable property that is not too remote in point of time generally is admissible using one of the following methods: First, an expert witness, in explaining the basis of his or her opinion as to the value of the property, may refer to other comparable sales of property which the expert took into account and which influenced the expert's opinion. Second, after a suitable foundation has been laid to show the similarity of the property, the fact and amount of sales of such property may be directly introduced in evidence without requiring the testimony of an expert as a prerequisite to admissibility. In the latter instance, exact similarity is generally not attainable and any dissimilarities in the land or its transfer are matters which go to the weight of the evidence and not to its admissibility. See generally *Hollywood Baptist Church &c. v. State Hwy. Dept.*, 114 Ga. App. 98, 100 (4) (150 SE2d 271) (1966); Pursley's Ga. Eminent Domain (1993 ed.), § 7-6. Contracts for the sale of the remainder of the property after taking have been "treated as sales for the purpose of comparative valuation by [a party's] expert witness." *Jordan v. Dept. of Transp.*, 178 Ga. App. 133, 134 (2) (342 SE2d 482) (1986). This case, however, differs significantly from *Jordan*, as the total price paid by Mendel included both the undisclosed purchase price of the remainder and the undisclosed price paid for the assignment of rights. Thus, *Jordan*, supra, is not controlling in this case.

Inherent in the trial court's ruling was its determination that the $220,000 price paid by Mendel did not accurately reflect the actual purchase price of the remainder, the jury would be left to speculate as to that amount, and the potential for prejudice in admitting misleading evidence for jury consideration substantially outweighed the probative value of the evidence. The admission of evidence lies in the sound discretion of the trial court. See *Gully v. Glover*, 190 Ga. App. 238, 242 (4) (378 SE2d 411) (1989). In this case, the jury would have been misled if they had been informed that Mendel had paid $220,000 to purchase the remainder; and if the parties had been allowed to extensively litigate the collateral issue of the price paid for the assignment, a fair risk exists that the jury would have become confused as to the primary issue under consideration. A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See generally *Hicks v. State*, 256 Ga. 715, 720-721 (13) (352 SE2d 762) (1987). These matters are appropriately within the sound discretion of the

trial court. Id. at 721. The DOT has failed to establish that the trial court abused its discretion in excluding this evidence. Thus, the DOT's claim of error is unpersuasive.

3. The DOT contends that the trial court erred in allowing Mendel's expert to testify as to consequential damages because the expert did not use a proper "before and after" analysis to determine the value of the remainder. See generally *Dept. of Transp. v. Gunnels*, 175 Ga. App. 632 (1) (334 SE2d 197) (1985), rev'd on other grounds, 255 Ga. 495 (340 SE2d 12) (1986). The DOT also contends that the trial court erred in allowing Mendel to introduce evidence of cost of cure as a separate element of damages.

(a) The DOT argues that Mendel's expert failed to use a genuine market approach in determining the value of the remainder just after the taking because he did not consider after-taking comparables. We disagree.

The expert repeatedly testified that he used a market approach and that his analysis was of a type typically used by appraisers and developers in this type of circumstance. He also testified that he looked at comparable sales both before and after the taking but did not make any adjustments, based on comparable sales, to the after-taking market value because there were no comparables in the neighborhood that were similarly situated at lower than road grade. The expert explained that he then considered cost of cure as a factor in his analysis, because that is what a developer or appraiser would consider in order to value this type of property. As this was a partial taking, the expert could consider the cost to cure at the time of the taking as a factor in determining the amount of recoverable consequential damages to the remainder. *Metts*, supra at 403 (4); compare *Dept. of Transp. v. Scott*, 224 Ga. App. 231, 233 (3) (480 SE2d 272), rev'd on other grounds, 268 Ga. 579 (492 SE2d 216) (1997). The expert was not required to make an adjustment for comparables in the "after" portion of his analysis. "Testimony of an expert can be considered even though he did not base his opinion entirely on comparable transactions." 5 Nichols on Eminent Domain (3rd ed.), § 23.07 [1], p. 23-81.

(b) During the course of his testimony, the expert testified that it would cost $131,000 to raise the property to an acceptable grade level. The expert did not err by assigning a specific monetary value to the cost to cure. See *Scott*, supra. Before using cost to cure as a meaningful factor, an expert would first have to ascertain the cost of the cure. Thus, the issue is not whether a specific monetary amount is assigned as the cost to cure but whether that evidence is improperly used to claim cost to cure as a separate element of damage, rather than to properly explain how cost to cure was used as a permissible factor in determining consequential damages. See *Dept. of Transp. v. Adams*, 193 Ga. App. 866, 867-868 (2) (389 SE2d 343) (1989). View-

ing the evidence in a light most favorable to support the verdict, we find that Mendel's expert properly used cost to cure as a factor in determining the amount of recoverable consequential damages. See *Scott*, supra.

4. The DOT contends that the trial court erred by allowing Mendel's expert to introduce evidence of marketing damage as a separate element of damage. During trial, Mendel's expert testified that it would take an additional year to cure the damage done to the remainder by the taking and that a developer or purchaser of the remainder would consider this factor, and the cost associated with it, in determining how much he would be willing to pay for the property. The expert stated that this factor is relevant in determining the value of the remainder after the taking. The record establishes that the expert used time to cure only as a factor in determining consequential damages and not as a separate element of damage. The trial court did not err as enumerated by the DOT.

The DOT argues that this evidence would also be inadmissible because it constitutes a claim of damage for temporary inconvenience due to construction of the project. Review of the record, as cited by the parties, reveals that contrary to the DOT's contention, it did not timely object to this evidence on this specific ground. Thus, this issue is not preserved on appeal. *Nodvin v. West*, 197 Ga. App. 92, 95 (3) (a) (397 SE2d 581) (1990).

5. The DOT claims that the trial court erred in admitting a photograph showing temporary inconvenience due to construction. The photograph was offered only to show the difference in elevation between the road and the remainder of the property. The picture depicted the completed grading of the slope and accurately depicted the final condition of the area shown in the photograph, except that grass had not been planted on the slope. Before the photograph was shown to the jury, the trial court instructed that: "what [the photograph] depicts is the slope, the relationship to the road. It does not depict the final condition of the property. It depicts the slope and the condition of the road, and that is the sole purpose for which it's admitted."

The trial court did not abuse its discretion in admitting the photograph. See *Dept. of Transp. v. Ballard*, 208 Ga. App. 474, 475 (3) (430 SE2d 848) (1993). There was an adequate evidentiary basis to authorize a jury to find that the conditions of the slope depicted in the photograph were continuous and permanent incidents of the public improvement of the state highway system. See *Dept. of Transp. v. Millen*, 222 Ga. App. 519, 521 (2) (474 SE2d 687) (1996); *Ballard*, supra.

Even assuming that error had occurred in admitting this photograph, which showed a slope without grass, in view of the limiting instruction given by the trial court, we are satisfied that such error

would have been harmless.

6. The DOT asserts the trial court erred by giving the jury the following quotient verdict charge:

> The law requires that your verdict be unanimous, that is, agreed to by all after the amount is determined. This would make it unlawful for you to agree in advance to be bound by the figure to be calculated by each of you writing down your own figure, then adding it up and dividing by twelve. If you wish to use this method to arrive at an amount for discussion without binding yourself in advance to accept the result, you may do so, and you are not prohibited from accepting the result and adopting it as your verdict after the amount is determined.

We disagree with the DOT's assertion.

In the case of *Dept. of Transp. v. Katz*, 169 Ga. App. 310, 313 (3) (312 SE2d 635) (1983), a quotient verdict charge was found to constitute reversible error because the charge expressly informed the jury that a vote of no damages could be proposed and considered in determining the average amount of damages to be considered. Because a condemnee must be awarded payment of just and adequate compensation for property taken and consequential damages, if any, to the property remaining after the taking, a charge authorizing a vote of no damages is not adjusted to the evidence in a condemnation case. Id. at 314. Unlike *Katz*, the charge in this case did not inform the jury that they could cast a vote of no damages in arriving at a quotient sum for consideration. Therefore, the charge did not constitute reversible error. Compare *Clayton County Water Auth. v. Harbin*, 192 Ga. App. 257, 259 (5) (384 SE2d 453) (1989).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MAY 5, 1999.

*Thurbert E. Baker, Attorney General, R. O. Lerer, Senior Assistant Attorney General, Weiner, Yancey, Dempsey & Diggs, Thomas C. Dempsey, Bryan P. Hilton, Jennifer A. Riddick*, for appellant.

*Crecelius & Crecelius, Bill W. Crecelius, Jr., A. Joseph Nardone, Jr.*, for appellee.