A05A0531. CARROLL COUNTY WATER AUTHORITY v. L. J. S. GREASE & TALLOW, INC. et al.

(617 SE2d 612)

PHIPPS, Judge.

The Carroll County Water Authority petitioned to condemn 37.959 acres of land owned by L. J. S. Grease & Tallow, Inc. A special master awarded L. J. S. $140,000 as the actual market value of the property taken. L. J. S. appealed the award and demanded a jury trial. By consent of the parties, the appeal was heard by a court-appointed arbitrator with further right of appeal as if the case had been tried before a jury. The arbitrator awarded L. J. S. $265,000 as the value of the realty and $1,250,000 for business loss damages, and the superior court entered judgment on the award. The Water Authority appeals, arguing, among other things, that business loss damages were too speculative and remote to be recoverable here. We disagree and affirm.

Evidence introduced at the hearing before the arbitrator showed that prior to the condemnation, L. J. S. operated a grease rendering plant on an 80-acre tract of land along Snake Creek in a remote area of Carroll County. Grease rendering plants perform a sanitation service for restaurants by collecting their used grease. They convert the grease into a commodity-type end product used for animal feed and in cosmetics and lubricants. Grease rendering plants earn income by collecting a charge for picking up the used grease and by selling the end product at a fluctuating price for the various industrial uses. When the market price of the end product is above a certain level, the plants impose no pickup charge. When, however, the price drops below a certain level, a pickup charge is imposed. Grease rendering is a relatively limited industry; there are no more than nine such plants in Georgia. It is also a highly regulated industry, as permits from numerous governmental authorities are required for operation of a plant. The plant operated by L. J. S. was previously owned by a company known as American Proteins.

In the 1980s, the Water Authority began attempts to locate a body of flowing water in the county capable of being used to establish a reservoir. In August 1994, the Water Authority received permits from federal and state authorities for construction of a reservoir on Snake Creek. The Water Authority instituted this condemnation proceeding because it needed property on which L. J. S.'s plant was located for construction of the reservoir. Unaware of the Water Authority's plans to construct the reservoir, L. J. S. purchased the rendering plant from American Proteins in October or November 1994. When the Water Authority later made a public announcement of its intent to construct the reservoir, L. J. S. began losing its customers due to the threatened closure of the plant. L. J. S.,

therefore, began winding down operations of the plant, until December 1999 when it let its federal permit expire. The Water Authority filed its petition to condemn approximately one-half of L. J. S.'s acreage in March 2000.

1. The Water Authority challenges the award on the ground that L. J. S. had ceased operations for more than a year before the condemnation. The Water Authority, therefore, argues that the award of business loss damages to L. J. S. violated the rule that "[b]usiness losses occurring before the date of [the] taking are not recoverable."[1]

We find no merit in this argument. Where the imminency of a condemnation forces an established business to close before the date of the condemnation, the absence of a business in operation on the property on the date of the taking does not automatically end all inquiry into the relevancy of business loss evidence.[2]

2. The Water Authority challenges the award on the ground that L. J. S. had an opportunity to relocate the rendering plant but chose not to do so.

This challenge is also without merit. The evidence showed that, prior to the condemnation, the possibility of relocating the plant was considered by L. J. S. and the Water Authority; and that L. J. S. found an alternative site for the plant; but that the Water Authority refused to help relocate the plant because the estimated cost of relocation, in excess of $2 million, was too high. Consequently, the arbitrator was authorized to find that the Water Authority bore responsibility for not having the plant relocated. We recognize that a condemnee may be required to relocate his business to another location in order to mitigate business loss damages.[3] Here, however, the estimated relocation costs exceeded the value of the business as found by the arbitrator. Under these circumstances, L. J. S. cannot be charged with a failure to mitigate damages by not relocating the plant.

3. The Water Authority challenges L. J. S.'s recovery of business loss damages. "A condemnee is entitled to recover just and adequate compensation for the loss of his property. [Cit.] A condemnee may recover business losses as a separate item if it operated [an established] business on the property, if the loss is not remote or speculative, and if the property is 'unique.' [Cits.]"[4]

---

[1] *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336 (1) (467 SE2d 319) (1996) (citations omitted); see *Five Forks v. Dept. of Transp.*, 250 Ga. App. 157, 159 (550 SE2d 715) (2001).

[2] See *Dept. of Transp. v. Acree Oil*, supra, 266 Ga. at 337 (2); *Dept. of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541, 543 (2) (309 SE2d 816) (1983); *Glynn County v. Victor*, 143 Ga. App. 198, 199 (2) (237 SE2d 701) (1977).

[3] See *Davis Co. v. Dept. of Transp.*, 262 Ga. App. 138, 143 (3) (584 SE2d 705) (2003).

[4] Id. at 139 (1).

(a) Unquestionably, L. J. S.'s grease rendering plant had been an established business. The Water Authority's reliance on cases such as *Ga. Transmission Corp. v. Barron*[5] and *MTW Investment Co. v. Alcovy Properties*[6] is, therefore, misplaced. The court in *Ga. Transmission*[7] recognized that, "[t]he fact that the property is merely adaptable to a different use is not in itself a sufficient showing in law to consider such different use as a basis for compensation; it must be shown that such use of the property is so reasonably probable as to have an effect on the present value of the land. . . ."[8] Grease rendering, as opposed to meat rendering (the use which L. J. S. ultimately intended to make of the plant), was the use to which the condemnee was putting the property.

(b) The evidence supports a finding that the property was unique. Three general rules are used to determine the uniqueness of a business property in a condemnation proceeding.[9] In *Housing Auth. of the City of Atlanta v. Troncalli*,[10] this court stated the first rule as follows: "If the property must be duplicated for the business to survive, and if there is no substantially comparable property within the area, then the loss of the forced seller is such that market value does not represent just and adequate compensation to him."[11] The second rule, established in *City of Gainesville v. Chambers*,[12] narrowed the *Troncalli* test by requiring that the property have a value particular to the owner incapable of being passed to a third party before the property can be considered unique.[13] The third rule was introduced in *Dept. of Transp. v. Eastern Oil Co.*,[14] wherein this court held that

> [u]nique properties "are generally not of a type bought or sold on the open market. Hence, there is no market value in the ordinary sense of the term, since market value presupposes a willing buyer and willing seller, which do not ordinarily exist in such a case. In cases of such a character,

---

[5] 255 Ga. App. 645 (566 SE2d 363) (2002).

[6] 228 Ga. App. 206, 206-208 (1) (a) (491 SE2d 460) (1997).

[7] Supra.

[8] Id. at 647 (citation and footnote omitted).

[9] *Dept. of Transp. v. Coley*, 184 Ga. App. 206, 209 (4) (360 SE2d 924) (1987); *Dept. of Transp. v. 2.734 Acres of Land*, supra, 168 Ga. App. at 543-545 (3).

[10] 111 Ga. App. 515 (142 SE2d 93) (1965).

[11] Id. at 518.

[12] 118 Ga. App. 25 (162 SE2d 460) (1968).

[13] Id. at 27 (2).

[14] 149 Ga. App. 504 (254 SE2d 730) (1979).

therefore, market value will not generally be the measure of compensation." [Cit.][15]

These rules "have been merged to include all three concepts as independent criteria under one general rule. Only one of the three criteria need be satisfied in order to authorize recovery of business loss damage."[16] Whether property is unique is a question for the finder of fact.[17] Based on evidence showing that grease rendering plants are not generally bought and sold on the open market, the arbitrator was authorized to find the property unique under the third rule set forth above. Whether the evidence supported a finding of uniqueness under the other tests is, therefore, moot.

(c) L. J. S.'s business loss damages were not too speculative or remote to warrant recovery.

*Bowers v. Fulton County*[18] was the first case in which our Supreme Court allowed a condemnee to recover for the destruction of an established business as a separate item of recovery in addition to the value of the underlying real estate. The court noted that "frequently the value of the business greatly exceeds that of the premises where it is conducted."[19] In this case, the arbitrator awarded L. J. S. $265,000 "for the taking of its property by condemnor" and $1,250,000 "for its business loss damages occasioned by condemnor's taking, due to the total destruction of its business." Guided by *Bowers*, we interpret the judgment in this case as being an award of $265,000 for the value of the real estate and $1,250,000 as being an award for the value of the business. The general rule, that lost profits are too speculative to authorize a direct recovery, is not necessarily a bar to the admission of evidence of lost profits to aid in establishing the value of a business.[20]

Ray Archer and Henry Wise were L. J. S.'s two valuation witnesses. Using an asset-based appraisal methodology, Archer estimated that as a going concern the component parts of the plant had an aggregate fair market value of $2,586,100; using the same methodology, Wise determined that the depreciated replacement-cost value of the plant and equipment was approximately $2 million.

---

[15] Id. at 505 (1).

[16] *Dept. of Transp. v. Coley*, supra, 184 Ga. App. at 209 (4) (citations and punctuation omitted).

[17] *Dept. of Transp. v. 2.734 Acres of Land*, supra, 168 Ga. App. at 542 (1).

[18] 221 Ga. 731 (146 SE2d 884) (1966).

[19] Id. at 739 (2).

[20] *Market Place Shopping Center v. Basic Business Alternatives*, 227 Ga. App. 419, 422 (2) (489 SE2d 162) (1997).

Using an income-based appraisal method, Wise alternatively determined that the value of the business was $2,220,000.[21]

Indisputably, L. J. S. purchased the plant from American Proteins for $1 million, and subsequently invested an additional $1.4 million in the business. The arbitrator found that the business had a value of $1,250,000, which represented about one-half of the condemnee's total capital investment in the plant and about one-half of Archer's determination of the plant's asset-based value, about $1 million less than Wise's determination of the plant's income-based value, and about $800,000 less than Wise's determination of its asset-based value. Therefore, this component of the award was well within the range of the evidence presented.

4. In reliance on *Chastain v. Fayette County*[22] and like cases, the Water Authority challenges the admissibility of evidence concerning Wise's income-based valuation. *Chastain* holds that expert opinion testimony may not be based on speculative and conjectural reasoning.[23]

The Water Authority has, however, waived its challenge to the admissibility of this evidence. Although the Water Authority filed pretrial motions in limine to exclude any testimony or evidence by L. J. S. as to any business losses resulting from the taking, the record reflects no pretrial ruling on the motions in limine. At the hearing before the arbitrator, the Water Authority did make a continuing objection to any evidence of business losses. But the arbitrator overruled the objection on the ground that the property had been shown to be unique, and no other ground for objection was raised. And, the Water Authority raised no objection whatsoever to Wise's testimony.

5. Finally, the Water Authority complains of the arbitrator's findings concerning the possible relocation or reconstruction of L. J. S.'s plant. The Water Authority argues that in making these findings, the arbitrator went beyond the relevant facts and violated the rule that evidence of settlement negotiations is inadmissible in

---

[21] "The income approach is defined as converting reasonable or actual income at a reasonable rate of return (capitalization rate) into an indication of value. . . . [T]he income approach necessarily takes into account what future earnings would be were the property interest not extinguished. . . ." *Housing Auth. of the City of Atlanta v. Southern R. Co.*, 245 Ga. 229, 231 (1) (A) (264 SE2d 174) (1980) (citation and punctuation omitted); compare *Dept. of Transp. v. James Co.*, 183 Ga. App. 798, 799-801 (1) (a) (360 SE2d 56) (1987) (disapproving version of income method that involved multiplying sales and deducting costs without capitalizing present worth).

[22] 221 Ga. App. 118, 119-120 (1) (470 SE2d 513) (1996).

[23] See also *Davis Co. v. Dept. of Transp.*, supra, 262 Ga. App. at 142-143 (2) (business losses based on prognosticated future events found to lie within realm of remote and speculative damages); *Canada West, Ltd. v. City of Atlanta*, 169 Ga. App. 907, 908-909 (1) (315 SE2d 442) (1984) (same).

condemnation cases.[24] The Water Authority, however, made the subject of plant relocation a relevant issue by claiming that L. J. S. breached its duty to mitigate damages by failing to relocate the plant. And the evidence fails to support the Water Authority's claim that L. J. S. breached its duty in that regard.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 12, 2005.

*Price, Pyles, Dangle, Parmer & Rooks, Thomas E. Parmer, Pursley, Lowery & Meeks, Charles N. Pursley*, for appellant.

*Winburn, Lewis & Stolz, Irwin W. Stolz, Jr., Cook & Connelly, Bobby L. Cook*, for appellees.

---

[24] *Hinton v. Ga. Power Co.*, 126 Ga. App. 416, 418 (4) (190 SE2d 811) (1972).