A05A1575. GEORGIA POWER COMPANY v. JONES et al.
(626 SE2d 554)

ELLINGTON, Judge.

In November 2002, Georgia Power Company filed a condemnation action as to 7.465 acres of property owned by Douglas and Joan Jones. A special master awarded the Joneses $26,000 as the actual fair market value of the condemned property and $5,880 for consequential damages. The Joneses filed an exception to the special master's award, and a jury trial was conducted in September 2004. The jury awarded the Joneses $1,003,500. Georgia Power appeals, contending the trial court made several erroneous evidentiary rulings. Because we find the Joneses were precluded from seeking business losses separately from the lost value to their land due to the condemnation, and the court abused its discretion in admitting speculative evidence on such business losses, we reverse.

Viewed in the light most favorable to the jury's verdict, the evidence showed that the Joneses have operated a bed and breakfast inn in midtown Atlanta since 1989. After searching for rural property for a few years, they purchased 162 acres of property in March 1997

with the intention of building and operating a second bed and breakfast in the north Georgia mountains. The mountain property had space for a lodge and six cottages, nature trails, and a pond, and offered a 360 degree view of a valley and a wilderness area. The Joneses built a road to the property and began constructing a lodge in April 1999.

In the spring of 2001, Georgia Power notified the Joneses that it intended to seek an easement across their property for a 500 KV power line, to be supported by at least two tall towers. The Joneses were concerned about the negative impact of the power line on their bed and breakfast business, so they delayed the development of other improvements, such as building the cottages on the property or creating the pond. They continued to build the lodge, however, and it was substantially complete by the fall of 2002.

In November 2002, Georgia Power filed a condemnation action as to a tract of 7.465 acres for a power line easement. The tract of land was 150 feet in width and located on the side of the mountain, approximately 1,000 feet from the back of the lodge. A special master awarded the Joneses $31,880 for the value of the condemned property (7.465 acres) and the consequential damages to the remaining property. The Joneses filed an exception to the award in superior court, and the court conducted a jury trial on damages in September 2004.

At trial, the Joneses claimed that the placement of large towers and the power line would severely interfere with the mountaintop view from the property and that the condemnation action "completely destroyed" their plans for the bed and breakfast inn. Accordingly, they sought damages for the loss of the business separately and in addition to the damages to the value of the real property that resulted from the condemnation. Georgia Power repeatedly objected to evidence of the Joneses' business losses, arguing that, because the Joneses were not ready to open the business and had not yet earned any income from the business, the Joneses were precluded from seeking business losses separately from the value of the property. The trial court overruled the objections and allowed the Joneses to present evidence on the value of the bed and breakfast business "as it existed at the time of the taking," in addition to evidence of the value of the land and the lodge.

On that issue, Mrs. Jones testified that her "conservative" estimate of the potential gross income from the bed and breakfast was $60,000 per month. She admitted that, in arriving at this amount, she was "ball-parking it." She based the figure on a future business plan to build 24 rooms, and she projected 50 percent occupancy for those rooms at $150 per night. Mrs. Jones also included $3,000 per month in income from hosting weddings. She did not testify about potential expenses, however, or give her opinion of the value of the business at

the time of the taking, when there were only four rooms potentially available for customers. A second witness for the Joneses, a bed and breakfast consultant, opined that, if the bed and breakfast had opened and had maintained a 50 percent occupancy rate, plus earned some income from hosting weddings, the business would be worth between $900,000 and $1,000,000. The consultant admitted that the 50 percent occupancy rate and the projected room rate of $150 per night were hypothetical figures and were estimates based upon national and local occupancy rates.[1] A property appraiser called by the Joneses also testified that, in his opinion, the condemnation reduced the value of the lodge and its "business potential" as a bed and breakfast from $1,100,000 to $300,000. The appraiser later changed his opinion by subtracting any compensation for the lodge. He then testified that, based upon a 90 percent reduction in value of the condemned land, plus consequential damages to the resale value of the remainder, the condemnation caused the Joneses to suffer direct and consequential damages in the amount of $1,390,000. It is unclear whether he included any business losses in that amount. Finally, Mr. Jones testified about the impact of the condemnation on the business and specifically asked the jurors to award him and his wife $450,000 for the total loss of the bed and breakfast business, a figure which did not include any compensation for the lodge. He did not elaborate on how he arrived at the valuation of the business. Mr. Jones also asked for $1,319,000 in compensation for the condemned tract of land and consequential damages to the remaining property.

The jury awarded the Joneses $1,003,500 in damages and Georgia Power filed a motion for new trial. The trial court denied the motion, and Georgia Power appeals.

1. Georgia Power claims the trial court erred in admitting speculative evidence regarding business losses for the bed and breakfast when the business was not yet in operation or otherwise "established." Georgia Power argues that, almost two years after the date of taking, the bed and breakfast still had not opened and had not earned any money, so the Joneses were precluded from seeking business losses as a separate element of damages. Georgia Power also argues that, even if it was not necessary to have an "established" business in order to recover business losses, the Joneses' evidence of their business' potential future earnings was based upon assumptions regarding occupancy rates, possible special event bookings, and other factors that were too speculative to support the jury's verdict. Having reviewed the entire trial transcript, we must agree.

---

[1] The consultant noted that some of the information might not be accurate, because some innkeepers do not want to disclose their actual occupancy rates.

> A condemnee is entitled to recover just and adequate compensation for the loss of his property. A condemnee may recover business losses as a separate item if it operated a business on the property, if the loss is not remote or speculative, and if the property is "unique." . . . In order to obtain business losses in a condemnation proceeding, the condemnee must first show that it had an established business on the property. . . . [Further, to] be recoverable, business losses must have been caused by the taking.

(Citations omitted.) *Davis Co. v. Dept. of Transp.*, 262 Ga. App. 138, 139-142 (1), (2) (584 SE2d 705) (2003). See also *Bowers v. Fulton County*, 221 Ga. 731, 737-739 (2) (146 SE2d 884) (1966) (accord). Although evidence of potential uses for the property, the uniqueness of the property, or the costs of renovations made in anticipation of starting a business on the property may be admitted to establish the value of the property prior to the condemnation,[2] a condemnee may not also recover separate business loss damages for projected profits from an unexecuted business plan, even if the plan is well-developed. *Davis Co. v. Dept. of Transp.*, 262 Ga. App. at 142-143 (2) (noting that, without such rule, "the owner of an undeveloped city lot could seek, in addition to compensation for the highest and best use of the real estate, business loss damages arising out of a well-developed but unexecuted plan to start a business that was expected to reap large profits"). Further, if there is an established business on the property, the condemnee's evidence of business losses must not be so remote or speculative that the jury is unable to estimate the amount of loss with reasonable certainty. Id. at 139 (1); see also *Dept. of Transp. v. Vest*, 160 Ga. App. 368, 369 (1) (287 SE2d 85) (1981) ("A bold assertion by the owner as to the amount of the lost profits has no evidentiary value unless supported by figures showing the firm's established profits and losses.") (citations omitted). In this case, there is no genuine dispute about whether the Joneses' property is uniquely suited and appropriate for a bed and breakfast inn. Instead, the relevant issues on appeal are whether the business was "established" at the time of

---

[2] See *City of Marietta v. Edwards*, 271 Ga. 349, 351 (519 SE2d 217) (1999) (with regard to the value of real property, the city must pay just and adequate compensation for recent improvements to the property); *Bowers v. Fulton County*, 221 Ga. at 739 (2) (noting that evidence of potential uses for property may be considered in determining the value of the real estate); *Dept. of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541, 542-543 (1) (309 SE2d 816) (1983) (evidence of the uniqueness of property for a particular business use may be admitted for establishing the value of the property); but cf. *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336, 337 (2) (467 SE2d 319) (1996) (evidence of business losses was too speculative to be considered in determining the value of the condemned property when the property had been vacant for three years prior to the taking).

the taking and, if so, whether the Joneses' evidence was too remote or speculative to demonstrate business losses with reasonable certainty.

(a) On the issue of whether the business was "established" at the time of the taking, the undisputed evidence showed that, almost two years after the condemnation, the lodge was not ready to operate as a bed and breakfast; the Joneses were still living in the lodge, making some of the rooms unavailable for potential customers; the lodge needed additional improvements to comply with the Americans with Disabilities Act; the Joneses lacked a permit necessary to operate the business; the Joneses had not yet advertised the business to potential customers; there had been no reservations made by customers for rooms or special events; and the bed and breakfast had earned no income.[3] Accordingly, the evidence presented failed to support a finding that the Joneses had an "established" business at the time of the taking that would allow them to seek business losses separately from the value of the property. *Taylor v. Jones County*, 205 Ga. App. 628, 630 (3) (422 SE2d 890) (1992) (finding that the condemnee was not conducting an established business on the condemned property and, therefore, could not recover for business losses separately from the value of the property). The trial court abused its discretion in allowing the Joneses to present evidence of business losses to support such a claim over the objections of Georgia Power. Id. at 629-630 (3).

(b) The Joneses contend, however, that it is not necessary to have an "established" business to separately recover business losses as long as there is "solid evidence" that a planned business would have been viable if not for the condemnation. The Joneses mistakenly rely on *Dept. of Transp. v. Acree Oil Co.*[4] for this proposition. In *Acree*, the Court held that business loss evidence may be relevant to determining *the value of the property* even though there was no business in operation on the property on the date of the taking. Id. The Court, however, did not hold that such evidence could be used to establish business losses *separately* from the value of the property. Id. at 337, n. 1 (specifically noting that the condemnee in that case did not seek business losses separately from the value of the property). Accordingly, *Acree* provides no support for the Joneses' argument that an "established" business is not required to recover business losses. Further, the other cases cited by the Joneses for their argument are distinguishable on their facts, as each one involved a condemnee who operated a business on the property prior to the condemnation action

---

[3] Mrs. Jones did testify, however, that she thought they could have the facility ready to host a wedding or other special event if they had another two weeks to prepare for it.

[4] 266 Ga. at 337 (2).

but was forced to close the business prior to the taking due to the impending action. See *Carroll County Water Auth. v. L. J. S. Grease & Tallow*, 274 Ga. App. 353, 354 (1) (617 SE2d 612) (2005) (grease rendering plant); *Dept. of Transp. v. 2.734 Acres of Land*, 168 Ga. App. 541 (309 SE2d 816) (1983) (carpet store); *Glynn County v. Victor*, 143 Ga. App. 198 (237 SE2d 701) (1977) (restaurant).

(c) The Joneses also argue that, even if they did not have an "established" business at the time of the taking, it would be unfair to prevent them from seeking business losses when the only thing that prevented them from opening and operating a viable business was the condemnation action and resulting construction of the power lines. Even if the Joneses had been allowed to seek business losses under this scenario, however, the evidence they presented at trial to establish the value of their business was simply too speculative to support such an award. As shown above, Mrs. Jones' testimony was based upon the condition of the lodge as it existed at the time of the trial, not the date of the taking two years earlier. Even at the time of trial, the lodge was still not ready to accommodate paying customers. Further, her testimony regarding projected business income was based in part upon potential earnings from cottages that did not exist at the time of the taking and, in fact, have never been built. Moreover, the testimony of the other witnesses was based upon various assumptions regarding occupancy rates and rental income that were, in turn, based upon estimates of national and local data. Notably, there was no evidence to show how much, if any, of this projected income would exceed the business' expenses. Therefore, even if the Joneses had been entitled to seek business losses, we find their evidence of potential future income from the bed and breakfast was too speculative to support an award for the loss of the business. *Dept. of Transp. v. Vest*, 160 Ga. App. at 369 (1).

(d) Accordingly, because the Joneses failed to demonstrate that they had an established business at the time of the taking, the jury was not authorized to award damages for business losses as a separate item from the direct and consequential damages to the property. Because the jury's verdict does not distinguish between its award for damage to the value of the property and its award, if any, for the loss of the business, we must reverse the judgment on the verdict and remand the case for a new trial.

Georgia Power's remaining enumerated errors may recur during retrial. Therefore, we will address them here.

2. Georgia Power claims the trial court erred in instructing the jury that damages from the total destruction of an existing business due to a condemnation "would be separate from and in addition to the actual damages and [are] part of consequential damages." We agree that this instruction is, at best, confusing to the jury. As explained in

Division 1, supra, a condemnee may recover damages for the total loss of an established business, and this recovery is separate from the actual and consequential damages to the value of his property. *Buck's Svc. Station v. Dept. of Transp.*, 259 Ga. 825, 826 (2) (387 SE2d 877) (1990) ("business losses are not consequential damages"); *Bowers v. Fulton County*, 221 Ga. at 739 (2). Further, because the Joneses failed to show that they had an "established" business at the time of the taking, they were not entitled to seek business losses. Accordingly, this instruction was unnecessary and improper.

3. Georgia Power claims the court erred in excluding pictures that it wanted to use to rebut the Joneses' expert witness, a property appraiser. The pictures at issue were of a residential subdivision that was located near an existing power line. Georgia Power wanted to use them to rebut the appraiser's testimony that property around power lines is usually the last piece of residential property that someone would build[s] upon in a subdivision and that such property *"tend[s] to be* developed more with low-income housing, mobile homes, and places like that." (Emphasis supplied.) The record shows, however, that Georgia Power failed to authenticate the pictures by showing the identity or address of the subdivision, failed to present any evidence as to the value of the property in the pictures, and, most importantly, failed to demonstrate whether the pictured subdivision was built before or after the power lines were installed — a critical issue if the purpose of admitting the pictures was to rebut the appraiser's testimony. In addition, Georgia Power presented other evidence at trial to support its claim that residential property around power lines is both highly desirable and marketable. Under the circumstances, we find the trial court did not abuse its discretion in excluding the pictures. See *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 830 (1) (386 SE2d 709) (1989) (the relevancy and materiality of evidence is for the trial court's determination, and the admission of evidence rests within the discretion of the court).

4. Georgia Power claims the trial court erred in admitting the Joneses' testimony about their concerns regarding adverse health effects caused by power lines. Georgia Power filed a pre-trial motion in limine to exclude evidence about alleged health risks associated with power lines and electromagnetic fields. See *Dixie Textile Waste Co. v. Oglethorpe Power Corp.*, 214 Ga. App. 125, 125-126 (1) (447 SE2d 328) (1994) (the trial court properly excluded testimony regarding the public's fear of electric power lines when the condemnee "failed to demonstrate how the impact of general, public fear on its remaining property could be calculated with a reasonable degree of certainty") (citation omitted). The trial court did not rule on the motion in limine, and instructed Georgia Power to make its objections at trial. At trial, Mrs. Jones testified that she would not choose to live

near a power line because of the history of cancer in her family. Mrs. Jones also testified that she believed the power line would dissuade potential customers from staying at the bed and breakfast, because they would be looking for a rural setting and would not want to stay so close to a power line or have it interfere with their views from the lodge. Later, Mr. Jones testified that customers might not want to come to a bed and breakfast in such close proximity to power lines because there is evidence that they are harmful.

At the hearing on the motion for new trial, the trial court found no reversible error in allowing the Joneses' testimony, noting that the testimony did not go to the issue of whether the power lines were, in fact, dangerous, but instead went to the issue of whether the presence of the power lines would discourage customers from staying at the bed and breakfast and, therefore, would destroy the business. The Joneses failed to demonstrate with any reasonable degree of certainty, however, how the alleged fears of potential customers would affect the business. *Dixie Textile Waste Co. v. Oglethorpe Power Corp.*, 214 Ga. App. at 125-126 (1). Further, given our decision in Division 1, supra, that the Joneses were not entitled to damages for the loss of the business, we find that the challenged testimony was irrelevant and prejudicial and that it should not have been admitted.

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

DECIDED JANUARY 24, 2006 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Troutman Sanders, Donald W. Janney, Douglas A. Henderson, Lynette E. Smith, Hugh B. Pettit III*, for appellant.

*Vaughan & Evans, Donald C. Evans, Jr., David A. Webster*, for appellees.

