**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0267. TOLER et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

McMILLIAN, Judge.

On May 3, 2000, the Georgia Department of Transportation ("DOT") initiated proceedings to condemn 1.7 acres of land in Wilkinson County (the "Property") owned by Charlotte Lord Toler, Ray E. Toler, and William T. Toler (the "Tolers"). The Tolers appealed the condemnation and demanded a jury trial. They later asserted a claim for business losses arising out of kaolin production on the land. The matter proceeded to trial over 12 years after the initial taking, and on June 30, 2012, the jury awarded the Tolers $212,135 for "real property taken and damaged," but awarded them nothing on their business loss claim. The Tolers appeal the portion of the verdict denying them any recovery on the latter claim.

The record shows the Property was part of a larger tract, which was encumbered by a 1991 lease agreement (the "Lease") under which the Tolers granted J. M. Huber Corporation ("Huber") the right to mine kaolin and other like minerals. Under the Lease terms, Huber was required to pay the Tolers a lump sum of $50,000, along with an earned royalty of $2.07 per ton of mined kaolin, with a periodic cost of living adjustment. Huber had conducted mining on the Property in two separate phases and had paid the Tolers over $1 million under the Lease, but the Property was not being actively mined on the date of the taking. Although originally named as a party to the proceedings, approximately ten years into the litigation, on January 28, 2010, Huber assigned to the Tolers all rights to any condemnation awards to which it was entitled (the "Assignment"). It is undisputed that the Tolers did not pay Huber any consideration for the Assignment.

At trial, the Tolers sought compensation not only for the loss of their fee simple interest in the Property, but also for the business loss Huber suffered as a result of the taking, which, in the Pretrial Order, they asserted totaled $3,718,251.39. They contended that these losses were based on the loss of the ability to sell kaolin that would have been extracted from the 1.7 acres condemned by the DOT "and the surrounding area as required by setbacks and slopes." The Tolers assert that their

2

business loss claim was hampered by a series of evidentiary rulings by the trial court that the Tolers enumerate as error on appeal.

"The admissibility of evidence lies in the trial court's discretion, and the appellate court reviews evidentiary rulings under the abuse of discretion standard." *Thornton v. Dept. of Transp.*, 275 Ga. App. 401, 403 (1) (620 SE2d 621) (2005). See also *Davis Co., Inc. v. Dept. of Transp.*, 262 Ga. App. 138, 142 (2) (584 SE2d 705) (2003). Similarly, we review the trial court's denial of a motion in limine for an abuse of discretion. *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005). We now turn to the Tolers' enumerations, reciting additional facts as necessary to consider the parties' arguments.

1. The Tolers first assert that the trial court erred in denying their motion in limine seeking to exclude evidence and argument regarding the consideration they paid for the Assignment and by allowing such evidence and argument at trial.

The Tolers filed a pre-trial motion in limine "to exclude any documentary or oral testimony by DOT, any of DOT's witnesses and/or mention by counsel for DOT regarding the consideration paid by the Tolers to [Huber] for the Assignment of its claim." They argued in their motion that such evidence had no probative value for the issues in the case. The trial court denied the motion in limine at trial and also

3

overruled the Tolers' objections to this evidence at trial during the cross-examination of their valuation expert. The trial court stated in response to the objection that the evidence was "entirely relevant" to the issue of the value of the business loss claim.[1] The DOT, in fact, relied on this evidence in both their opening statement and closing argument to rebut the Tolers' claimed losses of $3.7 million. The Tolers assert that this evidence and argument was prejudicial because it allowed the jury to infer that the amount paid for the Assignment reflects the value of Huber's business losses. We agree.

The Tolers, as condemnees, were entitled to just compensation for the taking of the Property, and "where, as here, there is a partial taking of property by condemnation, just and adequate compensation is the sum of the market value of the property that is taken and the consequential damage, if any, to the property that remains, both measured as of the time of the taking." *Gwinnett County v. Ascot Investment Co.*, 314 Ga. App. 874, 875 (1) (726 SE2d 130) (2012). In addition to their just compensation for the taking, the Tolers also sought to recover Huber's business losses. Business losses may be recoverable as an additional element of

---

[1] Although the Tolers objected a second time during the cross-examination of another of their experts, the trial court did not specifically rule on that objection.

4

damages in a condemnation proceeding under certain conditions. "[W]hen the business belongs to a separate lessee [such as Huber], the lessee may recover for business losses as an element of compensation separate from the value of the land whether the destruction of his business is total or merely partial, provided only that the loss is not remote or speculative." *Dept. of Transp. v. Dixie Highway Bottle Shop, Inc.*, 245 Ga. 314, 315 (265 SE2d 10) (1980). Therefore, "[b]usiness [loss] is not an element of consequential damages, but an entirely separate element of recoverable damages. The destruction of an established business is and must be a separate item of recovery." (Citation and punctuation omitted.) *Buck's Svc. Station, Inc. v. Dept. of Transp.*, 191 Ga. App. 341, 342 (2) (381 SE2d 516) (1989). "Further, to be recoverable, business losses must have been caused by the taking." (Citation and punctuation omitted.) *Ga. Power Co. v. Jones*, 277 Ga. App. 332, 335 (1) (626 SE2d 554) (2006). Additionally, "business losses are recoverable as a separate item only if the property is 'unique.'" (Citations omitted.) *Dixie Highway Bottle Shop*, 245 Ga. at 315.

The issue of whether a business property is "unique" so as to support an award of business loss is a question for the jury. *Carroll County Water Auth. v. L. J. S. Grease & Tallow, Inc.*, 274 Ga. App. 353, 356 (3) (b) (617 SE2d 612) (2005). And

5

the Georgia courts have established three general rules for determining whether a business property is unique. But "[t]hese rules have been merged to include all three concepts as independent criteria under one general rule. Only one of the three criteria need be satisfied in order to authorize recovery of business loss damage." (Citation and punctuation omitted.) Id. The first rule provides that "[i]f the property must be duplicated for the business to survive, and if there is no substantially comparable property within the area, then the loss of the forced seller is such that market value does not represent just and adequate compensation to him." (Citation and punctuation omitted.) Id. at 355 (3) (b). The second test narrowed the first test "by requiring that the property have a value particular to the owner incapable of being passed to a third party before the property can be considered unique." Id. And the third rule provides that

> unique properties are generally not of a type bought or sold on the open market. Hence, there is no market value in the ordinary sense of the term, since market value pre-supposes a willing buyer and willing seller, which do not ordinarily exist in such a case. In cases of such a character, therefore, market value will not generally be the measure of compensation.

6

(Citation and punctuation omitted.) Id. at 355-356 (3) (b). The trial court charged the jury on these legal principles at trial.

In arguing that evidence of what they paid for the Assignment has no relevance to these issues, the Tolers rely on this Court's opinion in *Dept. of Transp. v. Mendel*, 237 Ga. App. 900 (517 SE2d 365) (1999). In that case, the DOT condemned a portion of a larger tract of land for a road project. The original condemnee was in bankruptcy at the time of the taking, and the bankruptcy trustee filed an appeal of the DOT's condemnation proceeding on behalf of the bankruptcy estate. Before the condemnation matter proceeded to trial, Mendel offered to purchase the condemnee's remaining property for $187,500. After Mendel raised his offer to $220,000, the trustee sold him the property and also assigned him the rights to the bankruptcy estate's pending claim in the condemnation proceeding. Id. at 900. Before trial, the DOT filed a motion in limine to limit Mendel's claim for recovery to the amount he paid for the assignment, which the DOT calculated as $32,500, which was the difference between Mendel's original offer of $187,500 and the final purchase price of $220,000. Id. at 900- 901 (1). The DOT argued that unless Mendel's recovery was limited to that amount, he would receive "an unauthorized windfall." Id. at 901 (1)

7

The trial court denied the motion, and the DOT appealed after the jury returned a verdict for $165,000 in favor of Mendel. Id. at 900.

In affirming the trial court ruling on the motion in limine, this Court noted that after the assignment, Mendel stood in the shoes of the original condemnee. *Mendel*, 237 Ga. App. at 901 (1). And the Court reasoned that "[t]he only relevant inquiry" in such a case, which did not involve any claim for business losses, "is the fair market value of the property at the time of the taking" and found that "[t]he amount of money which Mendel may have paid for the assignment is not relevant to this determination." Id. Instead, "[t]he real issue is what is just and fair compensation for the taking. Just compensation must be based on the value of the rights taken, without regard to the owner's personal relationship to the property taken." Id.

Although this appeal concerns the recovery of business losses, and not the issue of just compensation for the taking, the same principles apply.[2] The relevant inquiry in a claim for business loss centers around causation and the uniqueness of the Property. We find that evidence of what the Tolers paid for the Assignment is not

<hr>

[2] Although the DOT attempts to distinguish *Mendel* by noting that they were not attempting to limit the Tolers' evidence on their business loss claim to the consideration paid for the Assignment, this is a distinction without a difference. The DOT clearly argued to the jury that the evidence of such consideration defined the amount of any business losses.

relevant to those determinations. The DOT presented absolutely no evidence regarding how the parties arrived at the amount of consideration to be paid for the Assignment and no evidence that it represented to Huber the value of the business or the value of any claim for business losses. In fact, as the DOT admits, the only testimony on the issue, from a Huber employee, indicated that Huber entered into the Assignment "on advice of counsel." Accordingly, Huber may have considered a number of factors in determining whether to assign its rights, including the risk and costs associated with litigating a business loss claim. We note that when Huber executed the Assignment, the litigation already had been ongoing for almost ten years, and Huber could have simply decided that it did not want to incur the further legal costs involved in such a protracted litigation. Accordingly, we find that the trial court abused its discretion in admitting this evidence at trial.

And we cannot say that this error was harmless in light of the DOT's argument to the jury that they could consider the consideration paid for the Assignment in determining the amount of any business loss. In the opening statement, the DOT's counsel asserted that Huber does not contend that they sustained any losses and "lest there be any doubt, Huber was not paid one penny for relinquishing this claim." And in closing, counsel argued that jurors could infer from the fact that the Tolers paid

9

nothing for the Assignment that Huber did not have a loss. Accordingly, the Tolers are entitled to a new trial on their claim of business loss.[3] See *Aycock v. Fulton County*, 95 Ga. App. 541, 543 (4) (98 SE2d 133) (1957) ("utterly irrelevant" evidence as to the sale price of real estate "in no particular similar or comparable to the property condemned" was prejudicial, requiring grant of a new trial).

We will further address any remaining enumerations of error that address evidentiary matters likely to recur at any subsequent retrial of the case.

2. The Tolers contend that the trial court also erred in denying their motion in limine to exclude evidence or commentary regarding the fact that the DOT made an initial deposit into the trial court of its estimated compensation for the taking.

The DOT initially deposited $4,755 with the clerk of the trial court "as just compensation" for the Property (the "Deposit"). The Tolers filed a motion in limine seeking to exclude any evidence or commentary concerning the Deposit. They argued that allowing the DOT to tell the jury that it "already deposited an undisclosed

---

[3] Although the DOT argues that other evidence in the record could have supported the jury's verdict, there is no way to determine what effect the irrelevant evidence regarding the Assignment may have played in their deliberations based on the DOT's arguments in the case. Additionally, we find that the trial court made another evidentiary error, as addressed below, which improperly affected the parties' presentation of evidence and argument at trial.

10

compensation estimate for the taking and/or damaging of the [Tolers'] property [would be] misleading, irrelevant, immaterial and extremely prejudicial," leading to improper inferences by the jury. The trial court denied the motion, ruling that the parties could not discuss the amount of the Deposit, but they could comment "on the fact that there was an amount that had to be paid into court." And the DOT subsequently told the jury in its opening statement that "the DOT has to deposit the appraised value of the property with the clerk." And later, the trial court charged the jury that "the condemning authority tenders and pays into the court certain monies."

This Court has previously found that evidence as to the amount and fact of the DOT's deposit of funds into the Court at the time of the taking is inadmissible. *CNL APF Partners, LP v. Dept. of Transp.*, 307 Ga. App. 511, 516 (4) (a) (705 SE2d 862) (2010); *Dept. of Transp. v. Gunnels*, 175 Ga. App. 632 (334 SE2d 197) (1985), rev'd on other grounds, 255 Ga. 495 (340 SE2d 12) (1986). Accordingly, the trial court erred in denying the Tolers' motion in limine on this ground, which improperly opened the door for the DOT to mention the payment in its opening argument. Additionally, pretermitting whether the trial court's reference to the Deposit in its jury charge rose to the level of reversible error considering the charge as a whole, we find

11

that it was nevertheless error to reference the Deposit and that it should not be referenced in any subsequent retrial.

3. The Tolers next assert that the trial court erred in granting the DOT's motion in limine to limit the testimony of one of the Tolers' experts, Michael Ginn, an independent mining engineer.

On April 28, 2008, the DOT filed a motion to compel discovery from Huber and a non-party, Ginn Mineral Technology, Inc., which was owned by Ginn. One of the items the DOT sought in discovery was a copy of 2001 report prepared by Ginn, which purportedly contained test results of kaolin taken from core samples of four holes drilled on the Property and/or the surrounding area. During the hearing on the discovery motion in 2008, Huber's counsel, Hubert C. Lovein, stated that he had never listed Ginn as a potential expert "on the question of value and [he] will not be listed as a value expert by Huber." Lovein explained that the opinions as to value that Ginn reached in his 2001 report would not satisfy any tests to make them admissible in court. Thus, he stated that Huber did not "intend" to introduce those opinions and did not "think" Huber would use him for anything at trial. Rather, Huber planned to use its own analysis. Nevertheless, Lovein conceded that the DOT would be entitled to Ginn's 2001 report if he drilled different holes and used different samples from

those relied upon in Huber's own report. Lovein further stated that they did not intend to use Ginn because "as the law has developed, his value opinion – he's a geologist, I understand – his value opinion is not admissible."

Before trial, the DOT filed a motion in limine to exclude evidence of Ginn's 2001 report "and any testimony or evidence related to the contents of the report and the valuations cited therein." The DOT argued that Lovein's statements during the discovery hearing were binding admissions in judicio that prevented the Tolers from introducing Ginn as an expert on the value of the kaolin on the Property. Although the Tolers opposed the motion, arguing that Lovein's comments were conclusions of law and thus not binding admissions, the trial court granted the motion based on his conclusion that Lovein's representations to the Court "would trump [the Tolers'] authority."

The DOT asserts that Lovein's agreement not to call Ginn as a valuation witness is binding on the Tolers under the authority of *State Farm Fire & Cas. Ins. Co. v. Terry*, 230 Ga. App. 12 (495 SE2d 66) (1997). In that case, State Farm's attorney "affirmatively stated in open court that State Farm agreed not to raise [certain] affirmative defenses," and this Court found that agreement binding on State Farm. Id. at 17 (4). Pretermitting whether that agreement is properly characterized as

an admission in judicio,[4] the essence of the holding was that State Farm had affirmatively agreed not to raise those defenses, and that agreement was binding. Similarly, Lovein affirmatively agreed[5] that Huber would not call Ginn as a valuation witness, and it was within the trial court's discretion to find that agreement binding on Huber and the Tolers, as Huber's assignees. See generally *Southern Telecom, Inc. v. TW Telecom of Georgia L.P.*, 321 Ga. App. 110, 114 (3) (741 SE2d 234) (2013) ("assignee acquires all of the rights and remedies possessed by the assignor *at the time of the assignment,* and takes the obligation, contract, chose, or other thing assigned subject to the same restrictions, limitations, and defects as it had in the hands of the assignor") (citation omitted; emphasis in original); *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 739 (5) (698 SE2d 19) (2010) ("trial court retains broad discretion in determining whether to admit or exclude evidence") (citation and punctuation omitted).

---

[4] "Admissions in judicio apply only to facts in litigation in a particular case." See *Liberty Nat. Bank & Trust Co. v. Diamond*, 231 Ga. 321, 323 (III) (201 SE2d 400) (1973) (holding that attorney's statement in prior litigation that if his client won that case she would make no further claims on estate at issue were not admissions in judicio).

[5] That Lovein made this affirmative agreement based on his legal conclusion that the testimony would not be admissible does not alter the fact of his agreement.

Accordingly, we affirm the trial court's grant of the DOT's motion in limine on this ground.

4. The Tolers further assert that the trial court erred in preventing one of their experts, Robert Quintus-Bosz ("Bosz"), from testifying about the processes for kaolin production or the amount of finished product Huber could have derived from mining crude clay on the Property.

Because the trial in this case occurred in June 2012, former OCGA § 24-9-67.1 (b) governed the standards for the qualification of experts in civil cases. See Ga. L. 2011, p. 99, §§ 2, 101.[6] Our Supreme Court has explained that in determining the admissibility of expert testimony under the applicable standards,

> the trial court acts as a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony. . . . Reliability is examined through consideration of many factors, including whether a theory or

---

[6] "Pursuant to that legislative act, former OCGA § 24-9-67.1 (b) has essentially been reenacted as OCGA § 24-7-702 (b)." *Van Leuvan v. Carlisle*, 322 Ga. App. 576, 580 (2), n. 5 (745 SE2d 814) (2013). Moreover, we note OCGA § 22-1-14 (b), which exempts expert testimony regarding just and adequate compensation for the value of condemned property from the standards of OCGA § 24-9-67.1, does not apply in any condemnation proceeding filed before February 9, 2006. See Ga. L. 2006, p. 39, §§ 5 and 25.

15

technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. There are many different kinds of experts and many different kinds of expertise, and it follows that the test of reliability is a flexible one, the specific factors neither necessarily nor exclusively applying to all experts in every case.

(Citations and punctuation omitted.) *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 642-643 (1) (697 SE2d 770) (2010). The Supreme Court has emphasized that "the importance of the trial court's gatekeeper role . . . cannot be overstated," noting that

the objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

(Citations and punctuation omitted.) Id. at 645 (1). "Thus, regardless of an expert's experience or qualifications, the proffering party bears the burden of presenting evidence of reliability in order to meet the [applicable] standards." Id. at 646 (1). And this Court will not disturb the trial court's determination as to the qualification of an expert to present testimony absent a manifest abuse of discretion. Id. at 642 (1).

16

The trial court in this case made its determination based on the Tolers' proffer of Bosz's qualifications and his voir dire at trial. Because the evidence regarding Bosz's qualifications may differ, at least in emphasis and scope, at any subsequent retrial, the trial court may render a different ruling in that proceeding. Accordingly, we cannot consider, in this appeal, the issue of Bosz's qualifications to give the disputed testimony in the retrial. "[W]e have no authority to impose our judgment" on any potential issues as to which the trial court has yet to rule. *Taylor Auto Group, Inc. v. Jessie*, 241 Ga. App. 602, 604 (2) (527 SE2d 256) (1999).

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*