## A11A2099. PERRY v. GILOTRA-MALLIK et al.

(726 SE2d 81)

BARNES, Presiding Judge.

Ronald Perry sued emergency room pediatrician Shalini Gilotra-Mallik and her practice, Pediatric Emergency Associates, P.C. ("Mallik"), for the wrongful death of his seven-month-old daughter. After hearing the evidence, the jury returned a defense verdict, and Perry appeals, contending that the trial court erred in denying his request to treat some of his witnesses as hostile, in restricting his re-cross-examination of Mallik, in denying a request to charge, and in denying his motion in limine seeking to exclude the testimony of two expert defense witnesses. For the reasons that follow, we affirm.

The parties do not dispute the underlying facts. The Perrys took their daughter Gabrielle to the emergency room because she had a high fever and their pediatrician's office was about to close. The child was triaged, and her condition was assessed as urgent because of her elevated temperature, respirations, and pulse rate. Dr. Mallik examined the child, ordered the administration of tests and medicine, and after three hours, discharged her under the mistaken impression that the child's temperature had fallen. In fact, the child's temperature had remained elevated, a fact that a nurse had entered into the

hospital's electronic records system. At home less than an hour later, the child stopped breathing and subsequently died at the hospital.

Perry initially sued the hospital and Mallik in DeKalb County, but the case was transferred to Fulton County.[1] Perry dismissed his case against the hospital without prejudice.[2] Mallik was thus the only defendant in this case. The parties agreed in their pretrial order that the jury issues were whether Mallik breached the applicable standard of care in her treatment of the child; if so, whether that breach proximately caused her death; and if it did, how much would the jury award in damages. Perry contended specifically that Mallik violated the standard of care by discharging the child while she was in an unstable condition, "under the erroneous impression that both her temperature and her respiratory rate were significantly lower than they actually were." At trial, in addition to a number of fact witnesses, an expert witness testified for Perry that Mallik had violated the standard of care, and two expert witnesses testified for Mallik that she had not. After five days of trial, the jury returned a defense verdict.

1. Perry argues that the trial court erred by "refusing" to characterize as adverse the nurses Perry called to testify, which would have made them subject to his cross-examination. The record shows, however, that Perry waived any objection to the trial court's ruling on this issue. Before the presentation of evidence began, Perry asked for permission to call for cross-examination three nurses who had been hospital employees when the child died. Mallik responded that Perry could not call the former employees of a non-party for cross-examination, and when the trial court asked if Perry had any case law to the contrary, he responded, "We had frankly decided that was entirely in [the court's] discretion to do it the right way." The court responded that if the witnesses became hostile during direct examination, Perry could then seek permission to cross-examine them. Perry made no objection to the trial court's response, and during his direct examination of the nurses, did not ask the court to find them hostile.

"A party cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal. Acquiescence deprives him of the right to complain further; thus the issue is waived for purposes of appeal." (Citation, punctuation and footnote omitted.) *Ahmed v. Clark*, 301 Ga. App. 426, 428 (688 SE2d 361) (2009). Because Perry specifically stated he was leaving to the court's

---

[1] The child's mother, Theresa Perry, was initially a plaintiff also, but she died before trial, leaving Ronald Perry as the only plaintiff.

[2] Perry later refiled against the hospital in Gwinnett County, but that case was dismissed with prejudice because the statute of repose had expired.

discretion the determination of whether he could call these witnesses for cross-examination, and did not ask the court to declare them hostile while they testified, this issue is waived.

2. Perry contends that the trial court erred in several rulings regarding the admissibility of evidence. We review a trial court's evidentiary rulings for abuse of discretion. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999). "This is so because trial courts, unlike appellate courts, are familiar with a piece of litigation from its inception, hear first-hand the arguments of counsel, and consider disputed evidence within the context of an entire proceeding." *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 457 (2) (543 SE2d 21) (2001).

> A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(Citation omitted.) *Dept. of Transp.*, 237 Ga. App. at 902-903 (2).

Here, Perry contends that the trial court erred by allowing Mallik to present evidence that hospital nurses had violated the standard of care applicable to them while denying him the same opportunity. Perry's expert in emergency pediatric medicine testified on direct that the child had been in respiratory distress and unstable when Mallik discharged her, which violated the standard of care applicable to the doctor. On cross-examination Mallik questioned the expert about the information Mallik considered before discharging the child, and began to ask, "If the nurse . . . took the temperature of 103.6 degrees at the time of discharge and did not communicate that to Dr. Mallik and told her instead the fever resolved[,] or simply didn't give that information to Dr. Mallik, that would be below the standard of care for . . . ," and Perry objected on the ground that the question assumed facts not in evidence, and because the nurse was not a defendant whose standard of care was an issue in the case. The court overruled the objection, and the expert responded, somewhat elliptically, that the elevated temperature would have been "a strikingly abnormal vital sign and . . . should have been reported directly to the doctor."

On redirect, Perry reminded his expert that he had been asked whether a nurse violated the standard of care by not calling to the doctor's attention a final temperature of 103.6, and asked whether the doctor should have determined the child's temperature herself before discharging her. Perry's expert responded, "Sure," but went on to say that the critical issue upon discharge was not the child's

temperature but her respiratory rate, which had remained abnormal.

Perry also called Mallik for cross-examination, and after Perry rested, Mallik testified on direct. The trial court limited Perry's subsequent re-cross-examination of Mallik to issues which he had not previously covered or which were a surprise. The court denied Perry's request to ask Mallik whether she thought the nurses had violated their standard of care, which he argued was relevant to Mallik's credibility because she did not review the nurse's notes and form an opinion critical of them until after she was sued. Mallik noted that the issue of whether the nurses told Mallik about the child's elevated temperature before the discharge had been rendered largely irrelevant by the testimony of Perry's expert, who said the important sign was the child's respiratory rate, not her temperature.

Finally, Perry wanted to ask one of the nurses whether she had complied with hospital policy about reassessing patients and about the definition of stable and unstable. The trial court sustained Mallik's objection to questions about the hospital's policies because the level of nursing care was not an issue for the jury in this case, and such questions would inject prejudice regarding the collateral issue of whether hospital policies had been violated.

The record shows that the trial court did not abuse its discretion in making these evidentiary rulings. In its order denying Perry's motion for a new trial, the trial court concluded that Mallik's standard-of-care question to the expert regarding the nurse's actions was asked in the context of questions about the information upon which Mallik based her assessment while the child was in the E.R. and upon discharge. Because the hospital was not a defendant, whether its employees were negligent was not a jury issue. The trial court therefore sustained objections to questions that would have injected issues related to the nurses' negligence. Absent a showing that the trial court's rulings were unfair and prejudicial, this court will not second-guess the trial court's evidentiary decisions, and we find no such showing here. *Dept. of Transp.*, 237 Ga. App. at 902-903

3. Perry argues that the trial court erred in declining to give his request to charge regarding the liability of joint tortfeasors. As the trial court noted in its order denying Perry's motion for new trial, the parties' pretrial order did not identify joint liability as a jury issue. Further, Perry did not seek to amend the joint pretrial order to argue that the hospital was negligent or that the negligence of the hospital and Mallik jointly caused his child's death. As discussed in Division 1, whether the nurses were negligent was not an issue in this trial.

A trial court commits no error in declining to give a request to charge that is not adjusted to the pleadings, law, and evidence, *Gates*

*v. Navy*, 274 Ga. App. 180, 182-183 (3) (617 SE2d 163) (2005), and Perry's charge about joint tortfeasor liability was not so adjusted. Accordingly, we find no merit in this enumeration.

4. Finally, Perry contends that the trial court erred in denying his *Daubert*[3] motion in limine seeking to exclude the causation testimony of two of Mallik's three experts, arguing that Mallik failed to meet her burden of showing that the testimony was reliable and relevant.

OCGA § 24-9-67.1 (b) provides that a witness qualified as an expert may give opinion testimony if

(1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

Factors to consider in determining the reliability of the principles and methods upon which the opinion testimony is based include whether they can be tested; whether they have been subjected to peer review; their known or potential rate of error; and whether they have attained general acceptance within the scientific community. *Webster v. Desai*, 305 Ga. App. 234, 235 (1) (699 SE2d 419) (2010). "[W]hether a witness is qualified to render an opinion as an expert is a legal determination for the trial court, which will not be disturbed absent a manifest abuse of discretion." (Citation omitted.) *Moran v. Kia Motors America*, 276 Ga. App. 96, 97 (1) (622 SE2d 439) (2005).

Perry does not contend that Mallik's witnesses were unqualified, but rather that their methodology was unreliable and that one expert's conclusion was also irrelevant. After a pretrial hearing, the trial court determined that the testimony of Mallik's experts regarding the cause of death was relevant, reliable, and based on sufficient facts and data, and that their opinions about the cause of death were based on reliable principles and methods, appropriately applied to the facts of this case.

Perry argues that the trial court erred because Mallik's expert Dr. Beckwith could not determine the child's cause of death to a reasonable medical probability, but merely labeled the cause as a

---

[3] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993).

type of Sudden Infant Death Syndrome ("SIDS") that did not fall into previously-recognized categories and which was not generally recognized by the scientific community. Perry also argues that the opinion of Mallik's expert Dr. Radetsky that the child died of infectious heart disease was "mere educated speculation, not a scientifically supported opinion," because the expert reached this conclusion merely by eliminating other possible causes and not through reliable methods.

> The applicable standard of care often requires employment of a "differential diagnosis" methodology, whereby the physician considers all relevant potential causes of the patient's symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history.

(Citations and punctuation omitted.) *Smith v. Finch*, 285 Ga. 709, 711 (1) (681 SE2d 147) (2009). Here, Beckwith and Radetsky employed a differential diagnosis methodology and reached their conclusions after reviewing all of the records regarding all of the child's medical care from birth to death, as well as the autopsy report and slides, which were admitted into evidence at trial. Beckwith's opinion that the child died of SIDS was based on his own research and collaboration with other physicians, based on theories he had published in peer-reviewed journals. Radetsky's opinion that the child died from a heart problem was based on his experience, and he lectures to physicians about how to ascertain the cause of death when one was not obvious. Finally, both experts testified about the reliable principles and methods they applied to the facts of this case.

A review of the evidence presented during the *Daubert* hearing and the trial establishes that the trial court did not err in denying Perry's motion to exclude these experts' testimony regarding causation. See *Hankla v. Jackson*, 305 Ga. App. 391, 395 (1) (b) (iii) (699 SE2d 610) (2010).

*Judgment affirmed. Adams, J., concurs. Blackwell, J., concurs in Divisions 1, 3, and 4 and in the judgment.*

DECIDED MARCH 13, 2012 — 

*Jack F. Witcher, Daniel B. Greenfield*, for appellant.

*Huff, Powell & Bailey, Daniel J. Huff, Julye M. Johns, Greer Jackson, Thomas E. Greer*, for appellees.